2006 WY 32

**Ryan Patrick HOPSON, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 05–78.

Supreme Court of Wyoming.

March 21, 2006.

Representing Appellant: Megan L. Hayes of Laramie, Wyoming.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and James Michael Causey, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, JJ., and WALDRIP, D.J.

VOIGT, Justice.

[¶ 1] A jury found Ryan Hopson guilty of aggravated assault with a deadly weapon in violation of Wyo. Stat. Ann § 6–2–502(a)(ii) (LexisNexis 2003). Hopson later pled guilty to being an habitual offender with two prior felony convictions. He now appeals the judg-ment and sentence alleging that various er-rors occurred regarding his habitual offender charge. We affirm.

## ISSUES

[¶ 2] Hopson presents the following is-sues for our review:

1. Whether Hopson was denied his Fifth and Fourteenth Amendment rights when he proceeded to trial and testified in his own defense.

2. Whether the district court erred when it denied Hopson's motion to dismiss the criminal charge as it had been alleged in the Information.

3. Whether Hopson was deprived of his due process right to a fair trial due to prose-cutorial misconduct.

## FACTS

[¶ 3] On May 29, 2003, Cheyenne police officers attempted to serve an arrest warrant on Hopson. The warrant was issued in con-nection with a series of checks Hopson had forged in the Cheyenne area. Hopson was staying with an acquaintance whose house was under surveillance by Cheyenne's special enforcement unit. At some point, Hopson exited the house and noticed one of the offi-cers nearby armed with an MP–5 service submachine gun. The officer identified him-self and called for Hopson to stop, but Hop-son retreated into the house.[1]

[¶ 4] Four officers entered the house in pursuit of Hopson. The officers searched the main floor and again identified them-selves before entering the basement. Hop-son hid in a side room with the door closed and armed himself with a modified shotgun[2] while the officers searched the rest of the basement. While the officers were searching a nearby room, Hopson fired a shot in the direction of the door. The officers were verifying that none of them had accidentally discharged their weapon when Hopson fired

---

1. Hopson claimed that, at that time, he did not know the man with the gun was a police officer. However, the officer testified that he identified himself as a member of the Cheyenne Police Department and had his badge conspicuously placed on his belt.

2. The barrel had been sawed off and the stock ground down to a pistol-like grip.

another shot which splintered parts of the door and showered the officers with debris. One of the officers suffered a lacerated lip, but they were otherwise unharmed. The officers retreated to the main floor and radioed for additional backup. A two-hour standoff ensued before Hopson surrendered.

[¶ 5] Hopson was charged in state court with felony forgery and, because he had been convicted in 1997 of aggravated assault (a felony), Hopson was also charged with two felony counts in federal court for being a felon in possession of a firearm and for possessing an unregistered firearm. After Hopson had been convicted of the forgery and the federal firearms charges, Hopson was charged in the instant case with one count of felony aggravated assault with a deadly weapon. The Information alleged that Hopson was also an habitual offender under Wyo. Stat. Ann. § 6–10–201 (LexisNexis 2003).[3] The State sought an enhanced sentence based on three previous convictions—the 1997 aggravated assault conviction, the forgery conviction, and the federal firearms convictions. If convicted of the aggravated assault and found to be an habitual criminal as charged in the Information, Hopson faced a mandatory life sentence.

[¶ 6] Before trial, Hopson filed a Motion to Dismiss Habitual Criminal Status in which he sought to prevent the federal firearms convictions from being considered as a basis to enhance his sentence if the jury found him guilty of the aggravated assault. Hopson claimed that the conviction did not, as a matter of law, arise out of a separate occurrence and therefore could not be considered in enhancing his sentence under § 6–10–201. The district court held a hearing on the issue and determined that the motion "require[d] resolution of a question of fact which must be determined by the jury in the second phase of the trial."

[¶ 7] Hopson's trial began August 17, 2004. Due to the nature of the habitual

criminal charge, the proceedings were bifurcated, with the jury first to determine Hopson's guilt or innocence on the aggravated assault charge and then, if it found Hopson guilty, to determine Hopson's status as an habitual offender. Four of the State's nine witnesses were the officers that served the arrest warrant on May 29, 2003. Hopson testified in his own defense. On the third day of trial, the jury began its deliberations and subsequently returned a guilty verdict on the aggravated assault charge.

[¶ 8] The habitual offender phase of Hopson's trial began the next morning. After opening statements, the prosecutor from Hopson's federal charges testified. Hopson successfully objected to portions of this testimony and sought a judgment of acquittal on the habitual criminal charge. The district court found that, as a matter of law, the State had failed to prove that the federal conviction arose out of a separate occurrence and, therefore, dismissed the habitual offender charge insofar as it charged Hopson as an habitual offender with three prior felonies. Hopson then pled guilty to an habitual offender status with two prior felonies.

[¶ 9] A presentence investigation report was prepared and Hopson was sentenced December 13, 2004. Due to his habitual offender status, Hopson faced a sentence of imprisonment for ten to fifty years. The State argued that thirty-five to fifty years' incarceration was an appropriate sentence based on Hopson's criminal history, "disregard for the ... safety of the Cheyenne community," and the facts and circumstances of the instant case. Hopson, his counsel, his mother, and his father asked the district court for some leniency.

[¶ 10] In determining Hopson's sentence, the district court considered Hopson's status as an habitual criminal, the nature of his previous crimes—including the fact that one of the crimes was a violent crime—Hopson's

---

3. Wyo. Stat. Ann. § 6–10–201 reads:
  (a) A person is an habitual criminal if:
    (i) He is convicted of a violent felony; and
    (ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.

  (b) An habitual criminal shall be punished by imprisonment for:
    (i) Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions;
    (ii) Life, if he has three (3) or more previous convictions.

age, his past conduct at boot camp, and his inability to complete probation successfully, as well as Hopson's family background and his good demeanor in court. The district court also considered his "potential to do good and to be a productive member of society," as well as his "potential to do serious harm." With regard to the aggravated assault, the district court noted that

> [t]he incident itself is a very, very serious incident. The Court sat through the testimony in that case, listened to the officers testify; again was truly struck by the courage that they displayed going down into very close quarters. I can't even image what that's like to be on the other side of the door when the shotgun is fired in very close quarters.
>
> And it is a miracle from the Court's perspective that no one was killed in that incident. And if someone had been killed, it would have all been because of Mr. Hopson and Mr. Hopson's conduct. And Mr. Hopson did not just shoot once. As the Court recalls the evidence, Mr. Hopson shot twice.
>
> . . . .
>
> Given the serious nature of this incident; given the fact that Mr. Hopson was involved in a previous violent attack on another individual; given the fact that he is a felon that has had the opportunity of the probationary system, had the opportunity for drug treatment with regards to his problems and has chosen to ignore those and to not take advantage of those and they have been ineffective; given the fact that this incident involved law enforcement attempting to do their jobs and the risk of serious injury or death to those, the Court determines that the minimum ten-year period is not appropriate. . . .

The district court then sentenced Hopson to eighteen to thirty years' incarceration, to be served consecutively to the forgery and firearm sentences that he had already received. Hopson now appeals from that judgment and sentence.

### DISCUSSION

**Issue I**

[¶ 11] Hopson claims that the State violated his right to testify in his own defense when it attempted to use his trial testimony against him during the habitual offender phase of his trial. He further argues that the State denied him due process and a fair trial because if he was convicted as an habitual offender with three prior felonies, he faced life imprisonment. Hopson claims that he would have pled guilty to the aggravated assault charge and the habitual offender status with two prior felonies if the Information had not included the federal firearm offense that was later dismissed. If he had pled guilty, Hopson argues, the district court would not have heard the officers' testimony and, therefore, he would have received a more lenient sentence.

[¶ 12] As Hopson concedes in his reply brief, he did not raise this issue in the district court and our review is limited to plain error.

> Once again, "[p]lain error will not be assigned unless: (1) the record clearly reflects the incidents urged as error; (2) appellant is able to demonstrate violation of a clear and unequivocal rule of law; and (3) it is shown that a substantial right of the appellant was materially abridged."

*Rutti v. State,* 2004 WY 133, ¶ 41, 100 P.3d 394, 410 (Wyo.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1990, 161 L.Ed.2d 858 (2005) (quoting *Seymour v. State,* 949 P.2d 881, 883 (Wyo.1997)).

[¶ 13] Even assuming that the record clearly reflects the incidents alleged as error, we fail to see how Hopson's right to testify in his own defense was infringed. Hopson argues that the district court clearly violated our holding in *Montez v. State,* 670 P.2d 694 (Wyo.1983). In *Montez,* 670 P.2d at 697–98, we held that a defendant who testifies in his own defense during the guilt phase of his trial may be impeached regarding his prior felonies; however, the same information cannot then be used substantively during the habitual offender phase to prove his habitual offender status. We said that doing so would create an impermissible conflict between the defendant's right to testify in his own defense and his right to have the prosecution

prove each element of his habitual offender charge beyond a reasonable doubt. *Id.*

[¶ 14] However, Hopson's reliance on *Montez* is misplaced. To the extent Hopson's testimony was used during the habitual offender phase of the trial, it was used to argue that the federal firearms convictions arose out of a separate occurrence and should be considered by the jury in determining his status as an habitual offender. The argument was made outside of the jury's presence and was offered as a response to Hopson's W.R.Cr.P. 29(a) motion for acquittal on the habitual offender charge. Hopson's belief that his rights were violated inexplicably ignores the fact that the district court ruled in his favor and reduced his habitual offender status to two prior felonies. In other words, Hopson won the very argument he now brings before us on appeal and any error was corrected below.

[¶ 15] Hopson next argues that his rights to due process and a fair trial were violated because he was given "no meaningful alternative" other than proceeding to trial. We assume Hopson's argument follows this logic: (1) Hopson faced an aggravated assault with a deadly weapon charge and a possible sentence enhancement as an habitual criminal with three prior felonies; (2) if convicted of both the aggravated assault and the habitual criminal status as contained in the Information, he faced a mandatory life sentence; (3) had he been charged as an habitual offender with only two prior felonies and convicted, he faced a sentence of ten to fifty years' incarceration; (4) had he been charged as an habitual offender with two prior felonies, he would have pled guilty to the aggravated assault and the habitual offender sentence enhancement; (5) because he was charged with three prior felonies, he proceeded to trial hoping to be found innocent and avoid a mandatory life sentence; and (6) because he elected to go to trial, the judge heard testimony from the officers at whom Hopson fired the shotgun, which testi-mony the district court relied on in imposing a "severe" sentence.[4]

[¶ 16] We first note that Hopson was fully informed of his constitutional rights prior to trial and has not presented any argument that the guilt phase of his trial was procedurally flawed. However, even if we were to assume for purposes of this appeal that some error occurred, Hopson has still failed to prove prejudice under the plain error test. Hopson's sole claim of prejudice is that his sentence was increased due to the trial testimony of the officers "that graphically depicted for the sentencing court the violent nature of the May 29, 2003 incident."

[¶ 17] We have said that " '[i]t is generally recognized that sentence imposition involves consideration of two broad categories: (1) the crime and its circumstances, and (2) the character of the criminal.' " *Cohee v. State,* 2005 WY 50, ¶ 20, 110 P.3d 267, 274 (Wyo.2005) (quoting *Wright v. State,* 670 P.2d 1090, 1092–93 (Wyo.1983)). The testimony that Hopson claims was prejudicial to him clearly falls within the first category. Hopson's argument, therefore, would require us to hold that he was prejudiced when the district court in the instant case knew of and considered the circumstances of Hopson's crime. We are unwilling to adopt this bizarre reasoning. The sentencing court necessarily considered the officers' testimony, which testimony was uncontested and clearly relevant to determining the nature of the crime and its circumstances.

[¶ 18] Moreover, if Hopson's case had not proceeded to trial, the district court inevitably would have been informed of the circumstances surrounding the crime through the presentence investigation report, Hopson's factual basis for his guilty plea, and the officers' testimony at sentencing in the form of victim impact statements.[5] *See* Wyo. Stat. Ann. § 7–21–102(a)(vi) (LexisNexis 2005). Because the district court would have been informed of the nature and circumstances of the crime, there can be no prejudice that

---

4. Hopson, however, recognizes that his sentence fell within the permissible statutory range.

5. The presentence investigation report in this case summarized the officers' testimony and in-dicated that "All three victims would like to be notified of the Defendant's date of sentencing. (One or all of the Police Officers will be making a victim impact statement before the Court.)"

resulted from the officers' trial testimony. We also note that Hopson's conclusion that his sentence would have been more favorable absent the officers' testimony is purely speculative and ignores the fact that the sentencing court considered a variety of factors in determining the sentence and merely mentioned that "the serious nature of the incident" was one consideration in reaching its ultimate decision.

[¶ 19] Finally, Hopson's argument ignores the fact that the bifurcated trial process allows a defendant to contest his status as an habitual offender independent of the adjudication of his guilt for the substantive offense. If Hopson believed himself innocent of the habitual offender charge as contained in the Information, he could have—and did—contest that charge during the habitual offender phase of his trial. His choice to exercise or forego his right to trial during the guilt phase was independent of his choice to contest his habitual offender status.

[¶ 20] For the foregoing reasons, we find that Hopson has not proven that he was prejudiced and, therefore, has failed to demonstrate plain error.

### Issue II

[¶ 21] Hopson next argues that the district court's denial of his pretrial motion to dismiss the habitual offender charge was in error. Hopson couched his pretrial motion both in terms of a motion to dismiss the habitual offender charge as contained in the Information and as a motion to suppress the federal firearms convictions should his trial reach the habitual offender phase. When reviewing such motions, we give deference to the district court's findings of fact if they are not clearly erroneous and we review any conclusions of law *de novo*. *Adams v. State*, 2005 WY 94, ¶ 8, 117 P.3d 1210, 1214 (Wyo.2005); *Lindsay v. State*, 2005 WY 34, ¶ 12, 108 P.3d 852, 855 (Wyo.2005).

[¶ 22] On August 3, 2004, Hopson filed a pretrial motion seeking a reduction in his habitual offender charge from three to two prior felonies. Hopson argued that his federal firearm possession felony should be removed from the Information because it did not arise out of a "separate occurrence" as a

matter of law. The district court held a hearing on the motion and determined that Hopson's argument needed factual development at the habitual offender phase of the trial. Hopson claims that the district court erred in so holding and, as a result, he proceeded to trial instead of pleading guilty. Hopson then claims, as he did in his first argument, that he was prejudiced because the district court heard and relied on the trial testimony of the police officers when it sentenced him to imprisonment for eighteen to thirty years. According to Hopson, had the district court dismissed the third felony from his habitual offender charge, he would have pled guilty and the district court would not have sentenced him as harshly because it would not have heard the officers' testimony.

[¶ 23] In order for relief to be granted on appeal, W.R.Cr.P. 52(a) and W.R.A.P. 9.04 require that any error in the proceedings below be harmful to the appellant. When reviewing whether an error was harmless, our focus is on whether an appellant's substantial rights were affected. W.R.A.P. 9.04. "To demonstrate harmful error, the defendant must show prejudice under 'circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play.'" *Condra v. State*, 2004 WY 131, ¶ 7, 100 P.3d 386, 389 (Wyo.2004) (quoting *Dysthe v. State*, 2003 WY 20, ¶ 10, 63 P.3d 875, 881 (Wyo.2003)).

[¶ 24] Again, even if we assume for purposes of this appeal that some error occurred when the district court denied Hopson's pretrial motion, such error would necessarily be harmless. Hopson ignores the fact that the information the officers testified to at trial would have been available to the district court at sentencing through the presentence investigation report, victim impact statements, and Hopson's own factual basis for his guilty plea. Moreover, we cannot say that considering the admissible and undisputed testimony of victims is a circumstance that manifests inherent unfairness and injustice. Therefore, if any error was committed when the district court denied Hopson's pretrial motion, such error was harmless. And beyond that, Hopson has not shown that, as a

matter of law, the district court was wrong in determining that there were factual issues to be resolved by the jury.[6]

## Issue III

[¶ 25] In his final argument, Hopson claims that prosecutorial misconduct occurred during the habitual offender phase of his trial and at sentencing. We have said that

> [w]hether such misconduct has been reviewed on the basis of harmless error, W.R.Cr.P. 52(a) and W.R.A.P. 9.04, or on the basis of plain error, W.R.Cr.P. 52(b) and W.R.A.P. 9.05, this Court has focused on whether such error affected the accused's "substantial rights." ... "Before we hold that an error has affected an accused's substantial right, thus requiring reversal of a conviction, we must conclude that, based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused." *Earll [v. State,* 2001 WY 66,] ¶ 9, [29 P.3d 787, 789 (Wyo.2001) ].

*Williams v. State,* 2002 WY 136, ¶ 21, 54 P.3d 248, 254 (Wyo.2002) (internal citations omitted).

[¶ 26] Hopson claims that prosecutorial misconduct occurred in the following situations: (1) the prosecutor argued "undocumented allegations" during sentencing, which allegations indicated that Hopson had traded drugs for the gun he used in the shooting; (2) the prosecutor offered to produce new witnesses at sentencing who would testify that Hopson had traded drugs for the gun; (3) the prosecutor attempted to use hearsay evidence and Hopson's own testimony to prove the firearm possession conviction during the habitual criminal phase of the trial; and (4) the prosecutor improperly charged Hopson as an habitual offender with three prior felonies. Hopson's only claim of prejudice from these incidents is that "[t]here is a reasonable possibility that, in the absence of the misconduct that forced this case to trial when no credible, admissible or relevant evidence existed to support a third, independent

felony conviction, the sentence imposed by the trial court might have been more favorable to Mr. Hopson."

[¶ 27] Insofar as Hopson claims the same prejudice as he does in his previous arguments, we may assume for purposes of this appeal that if misconduct occurred, no prejudice resulted. To the extent his first two arguments deal with alleged misconduct at sentencing—long after Hopson was "forced" to go to trial—additional comments are necessary.

■ [¶ 28] The State made the following comments at sentencing:

> [W]e frankly know by an undercover investigation that [Hopson] was dealing in methamphetamine, it's the only way he could support [his methamphetamine habit], which then gets us to the acquisition of the firearm that led to the federal charge.
>
> State's evidence as indicated in motion hearings would be that he acquired that firearm in exchange for meth at least before this incident.

Hopson's counsel objected to the argument and noted that the only evidence presented to the jury was that the shotgun used in the shooting "was in the room when he got there." In response to that objection, the prosecutor responded that "if the Court has any questions, we would be more than happy to bring the witnesses in." Ultimately, the district court ruled in favor of Hopson and stated that it would not consider where and how Hopson obtained the shotgun.

[¶ 29] Hopson now claims that

> [e]ven though the trial court disregarded this information in imposing sentence, the prosecutor's repeated assertions that undocumented allegations could support the habitual criminal charge reveals his fundamentally misguided belief that he possessed credible, admissible or relevant evidence to support this charge, a belief that informed and drove his misconduct throughout these criminal proceedings.

Regardless of what the prosecutor may or may not have believed when charging Hop-

---

6. This argument is somewhat ironic. Usually, criminal appellants argue the opposite—that factual issues exist that should have gone to the jury.

son as an habitual offender, Hopson still bears the burden of proving that he was prejudiced by the alleged error. *DeLoge v. State,* 2002 WY 155, ¶ 13, 55 P.3d 1233, 1239 (Wyo.2002); *Williams,* 2002 WY 136, ¶ 21, 54 P.3d at 254. In the instant case, the district court specifically disregarded the State's comments and Hopson's argument must fail. *See Mehring v. State,* 860 P.2d 1101, 1117–18 (Wyo.1993).

### CONCLUSION

[¶ 30] Even assuming, for purposes of this appeal, that the alleged errors actually occurred in the proceedings below, Hopson has failed to show that he was prejudiced by those errors. Hopson's belief that his sentence would have been more lenient is purely speculative, ignores the district court's duty to consider the crime and its circumstances, and disregards the fact that the testimony would have come before the district court at sentencing even if Hopson had pled guilty to the aggravated assault charge.

[¶ 31] We affirm.