2005 WY 94

Mark ADAMS, Petitioner,

v.

The STATE of Wyoming, Respondent.

No. 04–86.

Supreme Court of Wyoming.

Aug. 17, 2005.

himself.

---

5. At trial, Dobson needed to be reminded of the distinction between his corporation (Aspen) and

Representing Petitioner: Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Kerin, Senior Assistant Appellate Counsel; and Tonya A. Morse, Cheyenne, Wyoming. Argument by Ms. Morse.

Representing Respondent: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Dee Morgan, Senior Assistant Attorney General. Argument by Ms. Morgan.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] After engaging in sexually explicit communication in a chat room over the Internet with a person whom he thought was a 15 year old female, Mark Adams proposed meeting the young woman for purposes of engaging in sexual activity. He arrived at the proposed meeting place armed with alcohol and condoms and approached a young woman he thought to be the one he had been soliciting, but who was instead an employee of the Casper Police Department, and he was arrested. A jury convicted him of attempted sexual exploitation of a child, in violation of Wyo. Stat. Ann. §§ 6–4–303(b)(ii) and 6–1–301 (LexisNexis 2003), and one count of attempted solicitation to engage in illicit sexual relations, in violation of § 6–1–301 and Wyo. Stat. Ann. § 14–3–104 (LexisNexis 2003). He appeals claiming the district court erred in not dismissing the charges because the Internet communications were between him and a police officer, not a child, and, consequently, the State had produced insufficient evidence of a violation of the statutes. He also contends the district court improperly allowed computer generated evidence to be admitted while refusing to allow him access to the police department's computer, and the prosecutor committed misconduct in his closing argument. Finding no error, we affirm.

## ISSUES

[¶ 2] Mr. Adams presents the following issues for review:

I. Whether the trial court erred in denying defendant's (Petitioner herein) pretrial motion to dismiss?

II. Whether the trial court erred in denying defendant's motion for acquittal because the State's evidence was insufficient?

III. Whether prosecutorial misconduct prejudiced the jury and denied the defendant his right to a fair trial?

IV. Whether petitioner was denied a right to a fair trial and denied his constitutional right to present a defense due to evidence being withheld by the State?

The State phrases the issues as follows:

I. Does the Wyoming general attempt statute, Wyo. Stat. Ann. § 6–1–301, apply to situations where a law enforcement officer pretends to be a child on the internet?

II. Did the prosecutor commit misconduct during closing argument?

III. Did the district court abuse its discretion when it admitted evidence of the online communications between petitioner and law enforcement, and did the State withhold evidence from petitioner such that he was denied his right to a fair trial?

## FACTS

[¶ 3] On December 4, 2002, an adult male Casper Police Department detective entered an online "chat room" and posed as a 15 year old female with the screen name "caspurgirl88." He provided a profile indicating he was a female named "Amber" who lived in Casper and whose hobbies were "shopping, boys, partying, and boys," but did not indicate an age or date of birth. Mr. Adams, whose screen name was "maradam21," contacted "Amber" through instant messaging in the Yahoo.com chat room under the category "romance" on the night of December 4, 2002. Two minutes into the conversation, Mr. Adams asked "Amber" how old she was and her response was 15. He proceeded to ask

increasingly sexually graphic questions including questions about her anatomy and sexual experience. He offered to teach her about sex and, ultimately, sent nude pictures of himself, including pictures of his penis. After inviting her to his house and describing what he intended to teach her, "Amber" responded that she was afraid of getting pregnant. He told her not to worry about it because he had condoms.

[¶ 4] Arrangements were made to meet at McDonald's on Saturday night, December 7, 2002. In an instant message on December 6, 2002, Mr. Adams again initiated discussion of sexual matters. In this conversation, he admitted he could get in trouble because of their ages and asked her to keep their meeting a secret. "Amber" again expressed her fear of getting pregnant and he agreed to bring wine coolers and condoms with him to McDonald's. Prior to their meeting on December 7, another short instant message conversation occurred at 9:00 p.m.

[¶ 5] Shortly thereafter, the police took a young female dispatcher, fitted with a wire transmitter, to the McDonald's parking lot in an unmarked police car. After driving through the parking lot several times, Mr. Adams parked next to the car and began speaking with the woman. After he told her he had alcohol and condoms, the police arrested him. He was ultimately charged with one count of attempting to cause, induce, entice or coerce a child to engage in, or be used for any explicit sexual conduct, in violation of §§ 6-1-301 and 6-4-303(b)(ii), and one count of attempting to solicit, procure or knowingly encourage anyone under the age of 16 years to engage in illicit sexual penetration or sexual intrusion, in violation of §§ 6-1-301 and 14-3-104.

[¶ 6] Mr. Adams filed a motion to dismiss the charges arguing the statutes required the victim of the crimes charged to be a child, and, under these facts, there was no child victim. The district court denied the motion. Mr. Adams also filed a motion to preserve evidence complaining that he had sought the police department's computer files and that they had not been provided and could be destroyed. The district court granted the motion requiring the police to preserve the e-mail addresses involved in the investigation, the messages between Mr. Adams and "Amber," the chat room profile of "caspurgirl88," any other information stored on the police department's computer relevant to the case, and all notes and reports generated by the police in the course of the investigation.

[¶ 7] After a two day trial, the jury found Mr. Adams guilty on both counts. The district court sentenced him to 24 to 60 months in the Wyoming State Penitentiary on Count I, which was suspended in favor of a split sentence of 60 days in the Natrona County Detention Center and 48 months of supervised probation. On Count II, he was sentenced to a consecutive term of 18 to 36 months in the Wyoming State Penitentiary, which was suspended in favor of 48 months of supervised probation ordered to run concurrently with the probation for Count I. The judgment and sentence was filed on September 22, 2003. The notice of appeal filed February 11, 2004, was not timely and the district court denied Mr. Adams' motion for leave to file a late notice of appeal. However, this Court reinstated the appeal.

## DISCUSSION

### Denial of Motions to Dismiss and for Acquittal/Sufficiency of Evidence

[¶ 8] The same theme runs through Mr. Adams' claims that the district court erred in not granting his motion to dismiss the claims prior to trial and not granting his motion for acquittal for lack of sufficient evidence—his contention that he was charged with solicitation of a minor when no actual minor was involved. In both arguments, he appears to ignore the fact that the information charged him, and the jury convicted him, of *attempted* violation of the statutes. Whether the statutes proscribing attempted inducement of a child to engage in sexual conduct and attempted solicitation of a child to engage in illicit sexual penetration or intrusion require an actual child victim is a question of law which this Court reviews *de novo*. *Rutti v. State*, 2004 WY 133, ¶ 9, 100 P.3d 394, ¶ 9 (Wyo.2004).

[¶ 9] Our standard of review for sufficiency of the evidence is well established.

[W]e must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. (citing *Wetherelt v. State*, 864 P.2d 449, 452 (Wyo.1993)). "We will not substitute our judgment for that of the jury, ... our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." *Id.*

*Blakeman v. State*, 2004 WY 139, ¶ 11, 100 P.3d 1229, ¶ 11 (Wyo.2004).

[¶ 10] Without question, no child victim exists in this case. However, because the State did not charge Mr. Adams with violation of the child solicitation statutes but with attempting such a violation, that fact is not relevant. The evidence established Mr. Adams believed he was conversing with, and intending to meet and have sexual relations with, a 15 year old girl. He seems to suggest that before charges can be brought under the general attempt statute, there must be an actual minor victim. However, he provides no authority or cogent argument in support of that position.

[¶ 11] Section 6–1–301 provides:

(a) A person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime; or

(ii) He intentionally engages in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be.

[¶ 12] Mr. Adams was charged with attempting to cause, induce, entice, or coerce a child to engage in, or be used for any explicit sexual conduct in violation of § 6–4–303(b)(ii) and attempting to solicit, procure, or knowingly encourage anyone under the age of 16 years to engage in illicit sexual penetration or sexual intrusion in violation of § 14–3–104. We have held "absent a showing that the legislature intended to preclude use of the general attempt statute by the enactment of a special statute making the attempt a crime," a prosecutor may charge under the general attempt statute. *Bueno–Hernandez v. State*, 724 P.2d 1132, 1140 (Wyo.1986). Neither statute in question here criminalizes the attempt to commit the described crimes. Thus, the general attempt statute applies.

[¶ 13] The elements of the crime of attempt are: 1) an intent to do an act or bring about certain consequences which would in law amount to a crime; and 2) an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation. *Compton v. State*, 931 P.2d 936, 940 (Wyo.1997). We clarified in *Compton* the purpose of the general attempt statute is not to deter the completion of a particular crime, but to impose punishment and "corrective action" on those who have shown their dangerousness. *Id.* Mr. Adams clearly communicated his intent to entice a minor to engage in sexual acts and to encourage a minor to engage in sexual intrusion. He then took specific action to effectuate that intent, including driving to the proposed meeting place armed with wine coolers and condoms, thus meeting the requisite elements of the general attempt statute.

[¶ 14] Although he does not specifically characterize it as such, Mr. Adams posits his claim of error on the common law doctrine of legal impossibility which stems from a historical reluctance to punish defendants for unconsummated crimes. Audrey Rogers, "*New Technology, Old Defenses: Internet Sting Operations and Attempt Liability*," 38 U. Rich. L.Rev. 477 (2003–2004). Courts in jurisdictions which have adopted this defense have concluded a defendant cannot be convicted of attempting a crime if the circumstances are such that ultimate commission of the crime would have been impossible. However, we find no precedent in the jurisprudence of this state wherein that defense has

been recognized. In fact, in *Rutti*, ¶ 38, it was expressly rejected. While the facts in *Rutti* are somewhat different from those in the instant case, in holding that no prosecutorial misconduct had occurred, we noted that an actual child victim is not required for a conviction of attempted solicitation of a minor. The defendant in *Rutti* also thought he was soliciting sex over the Internet from a minor when it was actually an adult agent of the Division of Criminal Investigation. Seeking to withdraw his guilty plea, the defendant claimed the prosecution should have informed the court that it was legally impossible for him to have solicited a minor when the recipient of his advances was an adult law enforcement agent. This Court did not address the prosecutorial misconduct claim because it was clear that legal impossibility was not a defense to a charge of attempt and stated:

> Under Wyoming law, a person is guilty of attempting to commit a crime if "[h]e intentionally engages in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be." Wyo. Stat. Ann. § 6–1–301(a)(ii) (LexisNexis 2003). Rutti allegedly believed he was chatting with a minor. As such, he could be prosecuted for attempted solicitation of a minor. See generally *Cashatt v. State*, 873 So.2d 430, 436 (Fla.Dist.Ct.App.2004) ("A person is guilty of an attempted child solicitation if the evidence demonstrates that he had a specific intent to commit the substantive offense and under the circumstances as he believed them to be took actions to consummate the substantive offense, even though circumstances unknown to him made completion of the substantive offense impossible, and the fact that the receiver of the 'luring' communications was an adult undercover agent posing as a child is irrelevant to the culpability of the sender of the communications for attempting to lure a child to commit an illegal sexual act.")

*Id.*

 [¶ 15] · Furthermore, it appears plain from the language of the general attempt statute the legislature intended the same result. One is guilty of attempt if he or she engages in conduct which would constitute the crime had the attendant circumstances been as he or she believed them to be. Section 6–1–301(a)(ii). The focus of the statute is upon the subjective intent of the perpetrator, not the actual circumstances involved.

[¶ 16] Our reasoning in *Rutti* is similar to that followed by the Tenth Circuit Court of Appeals in *United States v. Munro*, 394 F.3d 865, 869 (10th Cir.2005), which also involved an adult undercover police officer communicating with the defendant over the Internet. Affirming Mr. Munro's conviction for attempted commission of the crime, the Tenth Circuit noted that the undercover agent did nothing to initiate the conversations about sex or meeting with the defendant, but that the defendant's actions without question indicated his intent to solicit a minor for sexual activity and he undertook a substantial step toward completion of the crime by going to the prearranged meeting place. *Id.* at 869–870. This reasoning is in concert with many other jurisdictions which have upheld attempt convictions where law enforcement officers pose as minors on the Internet. *Cashatt v. State*, 873 So.2d 430 (Fla.Ct.App.2004); *People v. Hsu*, 82 Cal.App.4th 976, 99 Cal. Rptr.2d 184 (2000); *Laughner v. State*, 769 N.E.2d 1147 (Ind.Ct.App.2002); *United States v. Root*, 296 F.3d 1222, 1223 (11th Cir.2002). *See also*, Rogers, *supra*. As noted by commentators, Internet cases such as this one obviate the concern which spawned the impossibility doctrine that persons could be convicted of "bad thoughts." Instead, the very nature of these cases, which capture the attempted communication with, and solicitation of, children, justifies the purpose of statutes which criminalize attempt and punish the dangerous conduct before it impacts a child. Rogers, *supra*. As a matter of law, we hold the presence of a minor victim is not a requisite for a conviction of attempted solicitation of a minor under § 6–4–303(b)(ii) or § 14–3–104.

 [¶ 17] In a related argument, Mr. Adams claimed the State's failure to identify a named minor victim hampered him in preparing a defense. We find this contention unpersuasive. He was fully informed prior to trial of the date of his alleged offense, the

content of his alleged conversations with the undercover agent, and the substantial steps he took to complete the crime. He was well-prepared for trial. While our opinion in *Walker v. State* 847 P.2d 542, 545 (Wyo.1993) held a victim should be identified before trial, the purpose was to avoid prejudicing the defendant by the absence of such identification. Mr. Adams experienced no such prejudice in this case.

### Prosecutorial Misconduct

[¶ 18] Mr. Adams claims his conviction should be reversed because of prosecutorial misconduct during the State's closing argument. Prosecutorial misconduct has always been condemned and we focus on whether the defendant's substantial right to a fair trial has been violated. *Condra v. State*, 2004 WY 131, ¶ 5, 100 P.3d 386, ¶ 5 (Wyo.2004). Closing arguments must be based upon the evidence. Prosecutors may comment upon the evidence and suggest inferences from the evidence to the jury. The propriety of a prosecutor's comments in closing arguments must be viewed in context. *Id.*, ¶ 12. Mr. Adams did not object to the State's closing argument and, therefore, his claims must be reviewed under the plain error standard. *Id.*, ¶ 10. Trial counsel may decide, for tactical reasons, not to object during closing argument concluding that calling further attention to a particular statement may add to its credibility. Consequently, we are inclined to defer to trial counsel and the district court when arguments of prosecutorial misconduct are raised for the first time on appeal. *Dice v. State*, 825 P.2d 379 (Wyo.1992).

[¶ 19] Mr. Adams complains about the following statements made by the prosecutor concerning the police department's conduct

What are the pros? The pros are essentially that the police department can say that we want to go out and we want to try to catch these guys before the damage is done. We want to catch these guys before we have a child who has been solicited on the Internet and has decided to and agreed to meet a person for the purpose of having sex.

* * *

And what do we all know? Did you at all ask yourself maybe or try to come up with an example of what other proactive approach is out there that law enforcement is involved with? Well, you have solicitation of prostitution for example. We all know from watching TV and watching the programs on TV about law enforcement agencies...."

* * *

Why did the Casper Police Department decide whether or not or decide to even do an actual meeting at the end in the first place? Because they know the law.

[¶ 20] Throughout the trial proceedings Mr. Adams claimed law enforcement entrapped him. In response, the prosecutor discussed why law enforcement uses the computer chat rooms in this fashion and why that process is in accordance with the law. Immediately after comments concerning the "pros and cons" of proactively seeking persons willing to violate the statutes prohibiting solicitation of minors, the prosecutor discussed the entrapment instruction and how it applied to the facts of this case. The comment regarding the police "knowing the law" was made in the context of explaining why their actions were not entrapment and was not improper.

[¶ 21] Finally, Mr. Adams complains about the prosecutor characterizing the photographs he sent by e-mail as "totally inappropriate." Such a comment is well within the confines of acceptable commentary on the evidence. Mr. Adams has failed to meet his burden under the plain error standard that the prosecutor's comments violated a clear and unequivocal rule of law.

### Admission of Computer Printouts of Internet Communication

[¶ 22] Mr. Adams claims the district court violated W.R.E. 1002, which requires use of the best evidence, when it admitted edited printouts of the chat room communications. He also claims the State's refusal to allow him access to the police department's computer to examine the communications as they existed on the computer hard drive violated the rule of *Brady v.*

*Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by failing to disclose favorable evidence material to the guilt or punishment of the defendant. Evidence is material under *Brady* only when a reasonable probability exists that the result of the proceeding would have been different had the evidence been disclosed. *Helm v. State,* 1 P.3d 635 (Wyo.2000). Evidentiary rulings on the admissibility of evidence are reviewed for a clear abuse of discretion and we will not disturb those rulings if the court could have reasonably concluded as it did. *Boykin v. State,* 2005 WY 15, ¶ 5, 105 P.3d 481, ¶ 5 (Wyo.2005); *Seward v. State,* 2003 WY 116, ¶ 13, 76 P.3d 805, ¶ 13 (Wyo.2003).

 [¶ 23] The district court ordered the State to preserve all communications between Mr. Adams and the Casper police detective posing as the 15 year old "Amber." At trial, the State produced printouts of instant messages between Mr. Adams and the detective. Mr. Adams objected to those exhibits contending they did not constitute the best evidence of the content of the dialogue between the two. He informed the court he had not been able to obtain the electronic counterparts of the exhibits which were the "original documents" for the purposes of W.R.E. 1002, and he had been unable to verify that the dialogue between Mr. Adams and the officer was accurately represented in the printouts.[1]

[¶ 24] The State's witness explained they could not allow Mr. Adams or his representatives unlimited access to the police department's computer because it held all of the other pending cases, information about other suspects, and images of child pornography. He testified that the computer was used exclusively for these types of investigations and that it is only accessible by personnel conducting those investigations. He likened the computer to an evidence locker where evidence pertaining to a particular case is segregated by saving the pertinent dialogue to a specific folder on the computer and the only way to preserve the information was to "cut

and paste" it to a file on the hard drive of the computer. Although Mr. Adams questioned the authenticity of this document under W.R.E. 901, the State's witnesses testified the entire dialogue was contained in the folder and no additions or deletions were made. The chat log exhibits introduced at trial were the hard copies of the evidence file folder. The district court ruled a proper foundation had been laid for the exhibits, authenticity had been shown, and they were true and correct copies of the original as required by W.R.E. 1002.

[¶ 25] The Wyoming Rules of Evidence require an original when the objective at trial is to prove the content of a writing. W.R.E. 1002. An original is defined as including any computer printout or other readable output of data stored in a computer or similar device, which is "shown to reflect the data accurately." W.R.E. 1001(3). If a computer printout is deemed to be a "duplicate" of the original record, its introduction is subject only to proof of the authenticity of the original. W.R.E. 1003. Authentication is shown by evidence sufficient to support a finding that the matter in question is what the proponent claims it is. W.R.E. 901(b)(9). Whether other evidence of the contents of a writing (other than the original) "correctly reflects the contents, the issue is for the trier of fact." W.R.E. 1008.

[¶ 26] The State's witness testified that the chat log exhibits were exact copies of the communication between the parties contained in the computer and thus, they were either appropriate computer "originals" or duplicates which were properly authenticated. Whether they accurately reflected the contents of the instant messages sent between the parties was an issue for the jury to decide and it had adequate evidence upon which to make such a decision. The district court found adequate foundation was laid for the documents and they were properly authenticated. Nothing in the record indicates that ruling was an abuse of discretion.

---

1. On appeal, Mr. Adams appears to claim the chat logs were inadmissible hearsay. However, that objection was not made in the district court and the prosecutor correctly noted that if there were such an objection, the defendant's statements on the logs would have been admissible as admissions of a party opponent under W.R.E. 801(d)(2).

[¶ 27] On appeal, Mr. Adams contends, for the first time, the State's refusal to allow him access to the computer to verify the accuracy of the chat logs constituted a *Brady* violation. However, the record indicates that argument was not made in the district court. We have repeatedly said we will not address issues raised for the first time on appeal. *Davis v. City of Cheyenne*, 2004 WY 43, ¶ 26, 88 P.3d 481, ¶ 26 (Wyo. 2004). In addition, Mr. Adams offers no explanation regarding what material evidence might have been withheld that was favorable to him and would have been material to his guilt or innocence.

## CONCLUSION

[¶ 28] We affirm Mr. Adams' conviction and hold that an actual child victim is not a prerequisite to a charge of attempted violation of § 6–4–303(b)(ii) or § 14–3–104. When reviewed in context, the prosecutor did not commit prosecutorial misconduct in his closing argument. The district court did not abuse its discretion by admitting the State's exhibits containing logs of the chat room communications between Mr. Adams and the police.