2007 WY 32

**Brian SEYMORE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 05–179.**

Supreme Court of Wyoming.

Feb. 23, 2007.

---

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; Marion Yoder, Senior Assistant Public Defender. Argument by Ms. Yoder.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; H. Michael Bennett, Assistant Attorney General. Argument by Mr. Bennett.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] This is an appeal from an escape conviction. The appellant contends that the jury was improperly instructed and that the prosecutor committed misconduct during the trial. We reverse and remand for a new trial.

* Chief Justice at time of oral argument.

## FACTS

[¶ 2] On December 24, 2003, during probation revocation proceedings in another matter, the appellant was ordered into placement with Frontier Corrections System (FCS) in Cheyenne, Wyoming. As part of the FCS intake process, the appellant signed an "understanding of escape" form that advised him of the types of actions considered by FCS to constitute "escape." Those actions included failing to return to the facility at the required time.

[¶ 3] On July 2, 2004, the appellant checked out of FCS at 5:00 p.m., with a required return time of 10:00 p.m. Trial testimony revealed that, instead of returning to FCS, the appellant spent the evening at his girlfriend's house. When the appellant did not return to the facility at 10:00 p.m., FCS personnel placed several telephone calls in an effort to locate him. Being unsuccessful, they notified local law enforcement agencies early the next morning that the appellant had escaped.

[¶ 4] The appellant telephoned FCS later that morning, allegedly stating that he "knew he was in trouble" and asking whether he should return to FCS or turn himself in to the local jail. The appellant testified that he tried to turn himself in at the jail, but the jail would not take him without an arrest warrant. Ultimately, the appellant was arrested on August 17, 2004 and charged with escape. He was convicted following a jury trial.

## ISSUES

[¶ 5] 1. Whether the jury was misinformed about the *mens rea* element of escape?

2. Whether the prosecutor committed misconduct?

## STATUTES

[¶ 6] The appellant was charged with violating Wyo. Stat. Ann. § 6-5-206(a)(i) (LexisNexis 2005),[1] which reads as follows:

1. The appellant was charged under the 2003 version of the statute, which had the same wording.

(a) A person commits a crime if he escapes from official detention. Escape is:

(i) A felony punishable by imprisonment for not more than ten (10) years, if the detention is the result of a conviction for a felony[.]

[¶ 7] The term "official detention" is defined at Wyo. Stat. Ann. § 6–5–201(a)(ii) (LexisNexis 2005):

(ii) "Official detention" means arrest, detention in a facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or detention in any manner and in any place for law enforcement purposes. "Official detention" does not include supervision on probation or parole or constraint incidental to release on bail[.]

[¶ 8] As part of the adult community corrections statutes, Wyo. Stat. Ann. § 7–18–112 (LexisNexis 2005) provides specialized definitions of "escape from official detention" for persons housed in such facilities:

(a) An offender, parolee or an inmate is deemed guilty of escape from official detention and shall be punished as provided by W.S. 6–5–206(a)(i) if, without proper authorization, he:

(i) Fails to remain within the extended limits of his confinement or to return within the time prescribed to an adult community correctional facility to which he was assigned or transferred; or

(ii) Being a participant in a program established under the provisions of this act he leaves his place of employment or fails or neglects to return to the adult community correctional facility within the time prescribed or when specifically ordered to do so.

## DISCUSSION

### *Whether the jury was misinformed about the mens rea element of escape?*

[¶ 9] We have a well-established standard for the review of jury instructions, which standard incorporates the test to be applied when there was no trial objection:

Jury instructions should inform the jurors concerning the applicable law so that they can apply that law to their findings with respect to the material facts, instructions should be written with the particular facts and legal theories of each case in mind and often differ from case to case since any one of several instructional options may be legally correct, a failure to give an instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, and the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed.

*Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001) (citing *Schmidt v. State,* 2001 WY 73, ¶ 23, 29 P.3d 76, 83 (Wyo.2001) and *Metzger v. State,* 4 P.3d 901, 908 (Wyo.2000)). We analyze jury instructions as a whole and do not single out individual instructions or parts thereof. *Ogden v. State,* 2001 WY 109, ¶ 8, 34 P.3d 271, 274 (Wyo.2001). We give trial courts great latitude in instructing juries and " 'will not find reversible error in the jury instructions as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at the trial.' " *Id.* (quoting *Harris v. State,* 933 P.2d 1114, 1126 (Wyo.1997)). *Brown v. State,* 2002 WY 61, ¶ 9, 44 P.3d 97, ¶ 9 (Wyo.2002).

Finally, we have indicated that when an appellant does not object at trial to the jury instructions, or request that a certain instruction be included, our review of this issue follows our plain error standard:

First, the record must clearly present the incident alleged to be error. Second, appellant must demonstrate that a clear and unequivocal rule of law was violated in a clear and obvious, not merely arguable, way. Last, appellant must prove that he was denied a substantial right resulting in material prejudice against him.

*Ogden v. State,* 2001 WY 109, ¶ 9, 34 P.3d 271, ¶ 9 (Wyo.2001) (quoting *In Interest of CB,* 749 P.2d 267, 268–69 (Wyo.1988)); *see also Brown,* ¶ 10.

*Leyva v. State,* 2005 WY 22, ¶ 8, 106 P.3d 873, 876 (Wyo.2005).

 [¶ 10] The appellant did not object at trial to the jury instructions that were given, and did not offer any additional instructions. Therefore, we review this issue under our plain error standard. Succinctly stated, the appellant now contends that plain error occurred here because the district court failed to instruct the jury on an essential element of the crime—intent—which is a fundamental error requiring reversal. *See Compton v. State,* 931 P.2d 936, 940 (Wyo. 1997).

[¶ 11] Nine instructions were read to the jury, two of which bear upon this issue. Instruction No. 2, in pertinent part, set forth the elements of the charged crime:

1. On or about July 3, 2004.

2. In Laramie County, Wyoming.

3. The Defendant, Brian Seymore.

4. Escaped from official detention.

5. While being detained as the result of a conviction for a felony.

In turn, Instruction No. 3 defined the term "escape" in the context of an adult community correctional facility:

A person placed at an adult community corrections facility is deemed to have escaped from that facility if, without proper authorization, the person fails to return to the facility within the time prescribed. The Frontier Corrections facility at which Mr. Seymore was placed is an adult community corrections facility.

The parties have stipulated that Mr. Seymore was placed by the District Court at Frontier Corrections facility as a result of his conviction for a felony offense.

[¶ 12] All first-year law students are taught that, as a general rule, every crime must contain two elements: an *actus* reus and a *mens rea.* Those terms are defined in *Black's Law Dictionary* 39 and 1006 (8th ed.2004), respectively, as follows:

[The] *actus reus* [is] the wrongful deed that comprises the physical components of a crime and that generally must be coupled with *mens rea* to establish criminal liability; a forbidden act <the *actus reus* for theft is the taking of or unlawful control over property without the owner's consent>.—Also termed *deed of crime; overt act.*

*Mens rea* [is] the state of mind that the prosecution, to secure a conviction, must prove that a defendant had when committing a crime; criminal intent or recklessness <the *mens rea* for theft is the intent to deprive the rightful owner of the property>. *Mens rea* is the second of two essential elements of every crime at common law, the other being the *actus* reus.—Also termed *mental element; criminal intent; guilty mind.*

*See, e.g., Lopez v. State,* 2004 WY 28, ¶ 19, 86 P.3d 851, 858 (Wyo.2004) (malice as the *mens rea* element of second-degree murder); *Keats v. State,* 2003 WY 19, ¶ 28, 64 P.3d 104, 113 (Wyo.2003) (malice as the *mens rea* element of first-degree arson); *Mitchell v. State,* 865 P.2d 591, 596, 599 (Wyo.1993) (physical intrusion as the *actus reus* and sexual arousal, gratification or abuse as the *mens rea* of second-degree sexual assault); and *Mondello v. State,* 843 P.2d 1152, 1163 (Wyo.1992) (agreement as the *actus reus* in conspiracy).

[¶ 13] In his brief, the appellant contends not only that the jury should have been instructed as to a *mens rea* element, but that it should have been instructed that escape is a "specific intent" crime. Not too long ago, we addressed the historical attempt to distinguish between "specific intent" and "general intent" crimes:

Appellant's claimed "logical impossibility" arises from the "intent" elements of these respective statutes. In the past, crimes have commonly been categorized by whether they require a "specific intent" or a "general intent." For many years, Wyoming had several pattern jury instructions defining and explaining the two terms, and

yet, the differences between the concepts were not always readily discernible.

Realizing that the distinction between a specific intent crime and a general intent crime is apparently troublesome, we can perhaps clarify it by stating it in a somewhat different way. When the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, the trial judge asks the jury whether the defendant intended to do the outlawed act. Such intention is general intent. When the statutory definition of the crime refers to an intent to do some further act or attain some additional consequence, the offense is considered to be a specific intent crime and then that question must be asked of the jury.

*Dorador v. State,* 573 P.2d 839, 843 (Wyo. 1978). Following that logic, an "attempt" is a "specific intent" crime in that the attempt statute requires that one act with the intent to commit the object crime. On the other hand, we have held that second-degree murder is a general intent crime, because it requires proof only that the act was done voluntarily or deliberately, not that there was a specific intent to kill. *Bouwkamp v. State,* 833 P.2d 486, 493 (Wyo.1992); *Ramos v. State,* 806 P.2d 822, 830 (Wyo.1991).

We have acknowledged a trend in the law to dispense with the pattern jury instructions defining and explaining intent due to their "vagueness and general failure to enlighten juries." *Compton v. State,* 931 P.2d 936, 941 (Wyo.1997). Instead, juries should be instructed as to the appropriate intent that is an element of the particular crime; "it is more important that the jury understand what exactly they [are required] to determine." Id. This is consonant with our recent holding that "the test of whether a jury has been properly instructed on the necessary elements of a crime is whether the instructions leave no doubt as to the circumstances under which the crime can be found to have been committed." *Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001).

The point is that attempting formally to distinguish between specific intent and general intent, beyond the substantive elements of the crime, may not be the surest way to define the nature of the intent that must be proven.

*Reilly v. State,* 2002 WY 156, ¶¶ 8–9, 55 P.3d 1259, 1262–63 (Wyo.2002) (footnote omitted.).

[¶ 14] It is the appellant's argument that the specific intent element of escape is that a defendant must have specifically intended to "evade the due course of justice" by "avoiding confinement." We cannot, however, find any indication in Wyo. Stat. Ann. § 6–5–206(a)(i) or Wyo. Stat. Ann. § 7–18–112 that the legislature intended there to be a specific intent element to the crime of escape, and we previously have said that escape is a general intent crime. *Slaughter v. State,* 629 P.2d 481, 483 (Wyo.1981). Therefore, the appellant is not correct in arguing that the district court's failure was the failure to include a specific intent element in the instructions detailing the elements of the crime of escape.

[¶ 15] The fact that the appellant's argument misses the mark does not, however, fully answer the intent question. The instructions were inadequate, but for a different reason: "even a general intent crime requires a showing that the prohibited conduct was undertaken voluntarily." *Rowe v. State,* 974 P.2d 937, 939 (Wyo.1999) (*citing Crozier v. State,* 723 P.2d 42, 52 (Wyo.1986)). The law of intent, as applied to the facts of this case, required the State to prove that the appellant *voluntarily* failed to return to FCS at the required time. Unfortunately, the jury was not instructed that it had to find the failure to return to have been voluntary. Without voluntary conduct, there is no *mens rea.* No crime has been committed, for instance, if an adult community corrections resident fails to return to the facility because of disabling injuries suffered in an automobile accident or a natural calamity. As we stated in *Reilly,* quoting from *Dorador,* "[w]hen the statute sets out the offense with only a description of the particular unlawful act, without reference to intent to do a further act or achieve a future consequence, *the trial judge asks the jury whether the de-*

*fendant intended to do the outlawed act."* *Reilly,* 2002 WY 156, ¶ 8, 55 P.3d at 1262 (quoting *Dorador v. State,* 573 P.2d 839, 843 (Wyo.1978)) (emphasis added). That was not done in this case, and we have repeatedly stated that it is fundamental error requiring reversal for a trial court to fail to instruct on an essential element of the charged crime. *Leyva,* 2005 WY 22, ¶ 8, 106 P.3d at 876; *Lapp v. State,* 2004 WY 142, ¶ 10, 100 P.3d 862, 865 (Wyo.2004); *Mueller v. State,* 2001 WY 134, ¶ 9, 36 P.3d 1151, 1155 (Wyo.2001); and *Compton,* 931 P.2d at 940.

### *Whether the prosecutor committed misconduct?*

[¶ 16] Even though our determination of the first issue requires reversal, we will discuss this second issue to restate important legal principles and to make sure the same mistakes are not made if the matter is retried.

■■■■ [¶ 17] Our standard for the review of claims of prosecutorial misconduct is well settled:

> Where there has been an objection below, claims of prosecutorial misconduct are reviewed under a harmless error standard:
>
>> Wyoming Rule of Appellate Procedure 9.04 states that "any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court." Wyoming Rule of Criminal Procedure 52(a) and Wyoming Rule of Evidence 103(a) contain similar provisions. The test for harmless error is as follows:
>>
>>> "An error is harmful if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had never occurred. To demonstrate harmful error, the defendant must show prejudice under 'circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play.'"
>>
>> *Condra v. State,* 2004 WY 131, ¶ 7, 100 P.3d 386, 389 (Wyo.2004) (quoting *Dysthe v. State,* 2003 WY 20, ¶ 10, 63 P.3d 875, 881 (Wyo.2003)). Where there

> has not been an objection below, claims of prosecutorial misconduct are reviewed under the plain error standard set forth earlier herein. *Condra,* 2004 WY 131, ¶ 6, 100 P.3d at 389.
>
> We decide claims of prosecutorial misconduct by reference to the entire record, and where the claim is one of improper argument, we consider it in the context of the entire argument. *Law [v. State ],* 2004 WY 111, ¶ 12, 98 P.3d [181,] 191 [ (Wyo. 2004) ]. We are reluctant to find plain error in a closing argument "lest the trial court becomes required to control argument because opposing counsel does not object." *Belden v. State,* 2003 WY 89, ¶ 38, 73 P.3d 1041, 1087 (Wyo.2003), *cert. denied,* 540 U.S. 1165, 124 S.Ct. 1179, 157 L.Ed.2d 1212 (2004) (quoting *James v. State,* 888 P.2d 200, 207 (Wyo.1994)). The question is whether, "based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused." *Lopez v. State,* 2004 WY 103, ¶ 56, 98 P.3d 143, 157 (Wyo.2004). "The burden of establishing prosecutorial misconduct rests upon the appellant who raises the issue." *Lancaster v. State,* 2002 WY 45, ¶ 32, 43 P.3d 80, 94 (Wyo.2002).

*Butcher v. State,* 2005 WY 146, ¶ 38, 123 P.3d 543, 554 (Wyo.2005).

[¶ 18] The appellant identifies nine alleged acts of prosecutorial misconduct, the cumulative effect of which allegedly denied to appellant a fair trial:

1. During *voir dire,* the prosecutor asked the panel, "[c]an we agree that, in my role as a prosecutor, that part of my job is to present the evidence, which *I think* tends to show Mr. Seymore guilty of a crime?" (Emphasis added.) This comment drew an objection from defense counsel and, during a bench conference, the prosecutor agreed that his phrasing was improper and offered to rephrase the statement. He then did so, as follows:

> Can you agree that as a prosecutor, it would be my job to present the evidence that tends to show Mr. Seymore guilty, and [defense counsel's] job, as the attorney for Mr. Seymore, is to present whatever

evidence tends to show him not guilty, and then your job will be to determine the wheat from the chaff?

Where I'm going with that is, can we agree those are the roles? If the defense has evidence they want you to consider in deciding this case, then they should put it to you. They should bring it to your attention. They should bring it to court and show it to you, or have someone testify about it, that it's not the State's role to present that evidence to you.

Although there was no trial objection to the rephrased question, the appellant now relies upon *Moe v. State*, 2005 WY 58, ¶ 21, 110 P.3d 1206, 1214 (Wyo.2005)[2], *cert. denied,* — U.S. —, 126 S.Ct. 1633, 164 L.Ed.2d 345 (2006), for the proposition that it is always improper for a prosecutor personally to vouch for the credibility of the state's evidence:

> The rationale for this rule has been stated as follows:
>
> > When the prosecutor asserts his credibility or personal belief, an additional factor is injected into the case. This additional factor is that counsel may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion; that members of the jury might be persuaded not by the evidence, but rather by a perception that counsel's opinions are correct because of his position as prosecutor, an important state official entrusted with enforcing the criminal laws of a sovereign state. While the prosecutor is expected to be an advocate, he may not exploit his position to induce a jury to disregard the evidence or misapply the law.
>
> [*Dysthe v. State*, 2003 WY 20, ¶ 29, 63 P.3d 875, 886 (Wyo.2003) ]. *See also Mazurek [v. State*, 10 P.3d 531,] 542 [ (Wyo.2000) ]. ("[I]t is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence of the guilt of the defendant.").

2. The prosecutor's rephrasing of his "I think" question made the situation worse because he then misstated the law as to the burden of proof by adding the statement as to defense counsel's duty to bring exculpatory evidence into court. The appellant cites *White v. State*, 2003 WY 163, ¶ 24, 80 P.3d 642, 653 (Wyo.2003), and *Lane v. State*, 12 P.3d 1057, 1066 (2000), for the dual propositions that the burden of proof in a criminal case never shifts from the State to the defendant, and the defendant has no duty to present evidence.

3. During closing argument, the prosecutor resurrected his improper burden-shifting argument through the use of a demonstrative exhibit (not preserved in the record) that indicated evidence the prosecutor believed should have been brought before the jury by the appellant. Defense counsel's objection was overruled.

4. During *voir dire*, defense counsel objected to the prosecutor's question in regard to the State's burden of proof being "beyond a reasonable doubt," whether "we [can] all agree that does not mean beyond any doubt?" The appellant's trial counsel argued, and appellate counsel now argues that it is error to attempt to define the term "reasonable doubt." The appellant relies upon *Blakely v. State*, 542 P.2d 857, 861 (Wyo.1975), wherein we confirmed the holding in *Cosco v. State*, 521 P.2d 1345, 1346 (Wyo.1974) that no instruction defining "reasonable doubt" should be given, because the term is self explanatory. *See also Rivera v. State*, 987 P.2d 678, 681 (Wyo.1999); *Collins v. State*, 854 P.2d 688, 699 (Wyo.1993); *Wells v. State*, 613 P.2d 201, 205 n. 1 (Wyo.1980); and *Bentley v. State*, 502 P.2d 203, 206 (Wyo. 1972).

5. The appellant's fifth alleged claim of prosecutorial misconduct concerns the first issue discussed in this opinion. During *voir dire*, defense counsel objected when the prosecutor told the jury panel that "[t]he State has to show you the who, the when, the where, and the what they did, but I don't

---

**2.** This writer feels compelled to note that, in the appellant's brief, the citation to *Moe* contained no paragraph number and no page number, and did not show that the language quoted from

*Dysthe* was a quotation. The failure to provide pinpoint cites occurred repeatedly throughout the brief.

have to show you why they did it. I don't have to show you what was going on in the mind—" The objection was overruled and the prosecutor went on to explain at considerable length why proof of the appellant's "mindset" was unnecessary. The appellant's argument that this constituted prosecutorial misconduct tracks his argument as to the first issue.

6. In discussing the concept of "escape" near the end of the State's *voir dire*, the prosecutor described movies he had seen wherein "Clint Eastwood or Steve McQueen [were] climbing the wire, tunneling out under the fence, guard towers, sirens, spotlight. You all can concede that the law will tell you it could be different than that. It doesn't have to be that extreme or dramatic." Defense counsel's objection that the prosecutor was making an argument on the law was sustained, but nothing further was said and the comments were not ordered to be stricken. The appellant contends that the statement was improper because it "went to the ultimate issue: was Mr. Seymore guilty of 'escape.'" *See Vargas–Rocha v. State*, 891 P.2d 763, 771 (Wyo.1995); and *Saldana v. State*, 846 P.2d 604, 617 (Wyo.1993), which, respectively, condemn a prosecutor or a witness giving an opinion as to the guilt of the defendant.

7. After outlining the State's evidence during his opening statement, the prosecutor concluded by saying, "It's that straightforward, folks. July of 2004, Brian Seymore walked away from the FCS program, walked away from justice, and now he's asking you to help him do it again." Defense counsel objected to the statement as being argument, but her objection was overruled. The appellant now contends not that the statement was argument, but that it "went to the ultimate issue."

8. The prosecutor failed to produce in discovery certain documents mentioned by State witnesses concerning courses the appellant had taken while at FCS. Defense counsel's objections as to the relevancy of the information and alleging the discovery failure both were sustained. The appellant's appellate complaint is that the State has an affirmative duty to disclose evidence favorable to a defendant. *See Kyles v. Whitley*, 514 U.S.

419, 434, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995); and *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972).

9. The appellant's ninth allegation of prosecutorial misconduct, which involves numerous comments made by the prosecutor during closing argument, will be easier to follow if quoted verbatim rather than being paraphrased:

> In closing, the [prosecutor] argued that "the defense and the State agree on almost everything." He argued that "the only question is escape" and informed them that Instruction No. 3 provided that a person placed in an [adult community corrections] facility is 'deemed' to have escaped if, without proper authority, the person fails to return within the time prescribed. "It means, if you check out, and they tell you you have to be back by a certain time, the law says that's escape."
>
> He went on to state that the facts were that the "defendant checked himself out, and he chose not to return." He asked, rhetorically, whether the defendant "regret(ted) that decision today as he sits in front of you? <u>I'm sure he does,</u> but does that change the fact that it happened? No." He explained that it was for the jury to "hold someone accountable, responsible for their actions. I know that's a tough decision to look at someone and <u>say they did wrong, but that's what you agreed to do when you agreed to become part of this jury</u> ... look at the facts, apply the law, and <u>hold someone accountable.</u>"
>
> Without bothering to say that the "evidence showed" the following scene, the [prosecutor] simply told the jury "what happened" on the night in question. " ... Mr. Seymore walked away from the FCS program. He walked away from a court order placing him at that program. Now <u>he's hoping you will let him walk away from this court one more time</u> by being swayed by sympathy or thinking it wasn't such a big crime, as they all go.... I submit that <u>it's your duty to find him guilty of the crime of escape as charged.</u>"

(Emphasis in original; citations omitted.) Specifically, the appellant then argues that it

is reversible error for a prosecutor to tell a jury that it is the jury's duty to find the defendant guilty. *See United States v. Sanchez*, 176 F.3d 1214, 1224 (9th Cir.1999); and *United States v. Polizzi*, 801 F.2d 1543, 1558 (9th Cir.1986).

[¶ 19] Finally, the appellant contends that, even if this Court finds each instance of alleged prosecutorial misconduct to have been individually non-prejudicial, the doctrine of cumulative error requires reversal. *See Wilde v. State*, 2003 WY 93, ¶¶ 30–31, 74 P.3d 699, 711–12 (Wyo.2003) ("the doctrine is, indeed, an available tool to address prosecutorial excess"). "Cumulative error" is defined at *Black's Law Dictionary* 582 (8th ed.2004) as follows: "The prejudicial effect of two or more trial errors that may have been harmless individually. ● The cumulative effect of multiple harmless errors may amount to reversible error." This Court has considered cumulative error innumerable times. *See, e.g., Hodges v. State*, 904 P.2d 334, 342 (Wyo.1995). Seldom, however, have we reversed a conviction based upon the doctrine. *See, e.g., Schmunk v. State*, 714 P.2d 724, 743 (Wyo.1986); and *Browder v. State*, 639 P.2d 889, 895 (Wyo. 1982).

[¶ 20] A similar fate has almost always befallen the appellant who raises in this Court the issue of prosecutorial misconduct, despite specific rules against such misconduct. Time-and-time again, we have said that "prosecutorial misconduct has always been condemned in this state." *Condra v. State*, 2004 WY 131, ¶ 5, 100 P.3d 386, 388 (Wyo.2004); *see also Adams v. State*, 2005 WY 94, ¶ 18, 117 P.3d 1210, 1217 (Wyo.2005); *Williams v. State*, 2002 WY 136, ¶ 21, 54 P.3d 248, 254 (Wyo.2002); and *Wilks v. State*, 2002 WY 100, ¶ 26, 49 P.3d 975, 986 (Wyo.2002). More specifically, we have said that prosecutors are not to inject into the trial their personal beliefs as to the credibility of the evidence. *Moe*, 2005 WY 58, ¶ 21, 110 P.3d at 1214; and *Lane*, 12 P.3d at 1065. We have also repeatedly said that prosecutors should not suggest that a defendant carries any burden of proof. Id. at 1066 (*citing Harper v. State*, 970 P.2d 400, 405 (Wyo. 1998)). And it is not appropriate for a prosecutor to argue to a jury that it is the jury's duty to convict the defendant. *Lafond v. State*, 2004 WY 51, ¶ 25, 89 P.3d 324, 332 (Wyo.2004); *Burton v. State*, 2002 WY 71, ¶ 50, 46 P.3d 309, 321 (Wyo.2002); *see also Sanchez*, 176 F.3d at 1224.

[¶ 21] Despite these repeated admonitions, prosecutors continue to test the waters by making statements and asking questions that cross the line, forcing this Court repeatedly to analyze an entire record for harmless error in the context of the whole case. In the instant case, we find that the cumulative effect of the following transgressions was prejudicial error in that we cannot be sure that the appellant was convicted just upon the evidence presented:

1. The prosecutor told the jury panel during *voir dire* that "I think" the evidence shows the appellant is guilty.

2. The prosecutor told the jury panel during *voir dire* and in closing argument that the defendant "should" bring any exculpatory evidence into court and present it to the jury.

3. The prosecutor told the jury panel during *voir dire* that the State did not have to prove any *mens rea* element of the crime.

4. The prosecutor told the jury panel during closing argument that, by becoming jurors, they had agreed to hold someone accountable.

5. The prosecutor told the jury panel during closing argument that "it's your duty to find him guilty of the crime of escape as charged."

[¶ 22] Perhaps, as the State argues in its brief, we could search the record and find support for the conjecture that none of these comments prejudiced the appellant because of the strength of the evidence, or because there was no objection, or because there was an objection, or because of the context, or because defense counsel successfully countered the comment. However, we are convinced that the number and gravity of these errors require reversal. The cumulative effect of the instructional error and the prosecutor's misstatements in this case was a conviction that cannot be trusted because it was a conviction by a jury that ***was***

*not told* that it had to find the appellant had acted voluntarily, but *was told* that the prosecutor believed the appellant was guilty, that the appellant had a duty to bring in any exculpatory evidence, and that the jury had a duty to convict the appellant.

## CONCLUSION

[¶ 23] We reverse and remand to the district court for a new trial because the jury was not properly instructed as to the *mens rea* element of the crime charged and because of the cumulative effect of several instances of prosecutorial misconduct.

VOIGT, C.J., delivers the opinion of the Court; GOLDEN, J., files a dissenting opinion; and HILL, J., files a dissenting opinion.

GOLDEN, Justice, dissenting.

[¶ 24] The majority opinion determines that mens rea is a required element of the offense of escape as charged and therefore it is reversible error if the jury is not instructed thereon. I fail to see such an element in the statute. To refresh—Seymore was charged under Wyo. Stat. Ann. § 6–5–206(a) which states that "[a] person commits a crime if he escapes from official detention." Clearly absent from the statute is a requirement of mens rea. The statute defines a strict liability crime. Had the Wyoming Legislature intended to make escape under this statute a general intent crime, it could have included a mens rea requirement as it did in Wyo. Stat. Ann. § 7–16–309, which defines an escape from a work release program to require an "intentional act." Because I find escape as defined by § 6–5–206 to be a strict liability crime, the jury instructions correctly excluded mens rea as an element of the crime.

[¶ 25] As for the prosecutor's statements, I have reviewed the trial transcript in its entirety. I find I must agree with Justice Hill. While some of the prosecutor's statements certainly are improper when read in isolation, when considered in the proper context and in the context of the entire record, as we must, the comments are not enough, in my estimation, to require reversal.

HILL, Justice, dissenting.

[¶ 26] I concur with the majority in that escape is a general intent crime. I cannot agree, however, with the majority's decision to reverse Seymore's conviction on the basis that the jury should have been instructed to find whether or not the failure of Seymore to return to FCS at the required time was voluntary because the issue was not raised by him. It is the responsibility of an appealing party to clearly identify and define the issues for this Court's review. "It is not the function of this court to frame appellant's argument or draw his issues for him." *Saldana v. State*, 846 P.2d 604, 622 (Wyo.1993) (Golden, J., concurring) (quoting *Hance v. Straatsma*, 721 P.2d 575, 577–78 (Wyo.1986)); see also *Ultra Resources, Inc. v. McMurry Energy Company*, 2004 WY 121, ¶ 8, 99 P.3d 959, 962 (Wyo.2004) ("[T]his court will not frame the issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation.") (quoting *State v. Campbell County School District*, 2001 WY 90, ¶ 35, 32 P.3d 325, 333 (Wyo.2001)); and W.R.A.P. 7.01(f) (requiring appellant to set forth an argument with respect to the issues presented for review). Seymore's contention of error was predicated on a claim that the district court erred by not instructing the jury that escape was a specific intent crime. No argument regarding voluntariness appears in Seymore's brief. I would find that any claim of error on this point was waived by his failure to clearly identify the issue and support it with cogent argument and citation to pertinent authority.

[¶ 27] I must also respectfully disagree with the majority's analysis of the prosecutorial misconduct issue. Even assuming that the incidents identified in paragraph 21 of the majority opinion constituted misconduct, I cannot agree that Seymore has met his burden of establishing prejudice. The majority's conclusion as to the cumulative effect of the prosecutor's improper comments is based, at least in part, on its determination that the jury was not properly instructed. See ¶ 22. Since that error was waived, the instructions as given to the jury are the law

of the case and the evidence in the record overwhelmingly supports the jury's verdict. *Reilly v. State,* 2002 WY 156, ¶ 14, 55 P.3d 1259, 1264 (Wyo.2002) ("[F]ailure to object to instructions at trial before the jury begins its deliberations operates to preclude appellate review of the instructions, which become the law of the case unless a plain or fundamental error can be shown to prevail."). Accordingly, I would hold that the prosecutor's comments, taken individually or collectively, did not prejudice appellant.

[¶ 28] I understand and fully sympathize with the majority's frustration with the actions of some of the prosecutors in this state and their seeming disregard of our repeated admonitions regarding proper argument and questioning. Nevertheless, each case must be examined on its own merits. In this case, I would not find prejudice and would affirm Seymore's conviction and sentence.