DECISION.
{¶ 1} Magistrates are granted great deference when issuing a search warrant. And even if the warrant is not supported by probable cause, evidence obtained by officers acting in good-faith reliance on the validity of the warrant should not be suppressed.
 {¶ 2} Plaintiff-appellant, the State of Ohio, appeals the trial court's suppression of evidence found in a search of defendant-appellee Ben German's residence. We reverse and remand.
 I. A Shooting, an Affidavit, and a Search Warrant {¶ 3} On July 24, 2003, Neil Beckroege was shot in the abdomen during a confrontation with a man in a white van. A few weeks later, on August 12, Beckroege identified German in a photo lineup as his shooter. The police set up surveillance on German's home (a trailer) and observed him come and go in a white van. Unfortunately, we do not know exactly when the police performed this surveillance, or when German was last seen at his home or in his van.
 {¶ 4} Detective Thomas Canada swore to an affidavit for a search warrant on August 24. The relevant portions of the affidavit stated, "On August 21, 2003[,] Affiant received information from a brother officer than on 07/24/03 around 2020 hours Ben German was involved in a verbal altercation with Neil Beckroege at 1013 Schiff Av. Cincinnati, Ohio 45202. As the argument continued Ben German pulled out a handgun and fired 2 shots in the air and then 1 shot at Neil Beckroege, striking him in the stomach. After shooting the victim, Ben German left in a white `panel like' van. Cincinnati Police Detective Mike Roth showed Neil Beckroege a photo line up on August 12, 2003, at 11:15 hours. Neil Beckroege picked Ben German out of the photo line up as the subject who shot him July 24, 2003. Surveillance has shown that the van that was used in the offense, and which is registered to Ben German at 72 Citation Circle, Cincinnati, Ohio 45030, to be located at that address in the Rolling Acres Mobile Home Park. German has been seen operating the vehicle used in the offense. Charges have been signed against Ben German for the offense of Felonious Assault."
 {¶ 5} Based on Canada's affidavit, a municipal judge issued a search warrant that included German's home, his van, and another vehicle seen at the home. The only description of the goods to be searched for was "[h]and guns and ammunition which were used in a shooting on July 24, 2003[,] at 1013 Schiff Ave, Cincinnati, Ohio 45205."
 {¶ 6} Police arrested German at his place of employment, which they then searched after the owner of the business gave his permission. During this search, they found a .357-caliber handgun in a black bag. The police then searched German's home and a shed that was approximately five feet from the back of the trailer. They found and seized a 9-mm handgun, a small marijuana plant, and a pound of marijuana. They also seized rifles, gun cases, ammunition, miscellaneous paperwork, over $1,700 in U.S. currency, and various other non-criminal goods.
 {¶ 7} German was charged in a six-count indictment: two counts of felonious assault stemming from the incident with Beckroege; one count of carrying a concealed weapon on the day that he was arrested; one count of possession of marijuana; and two counts of trafficking in marijuana. German requested a bill of particulars, which stated that Beckroege had been shot with a 9-mm bullet. So even though the caliber of the bullet from the shooting was known, it was not listed on the search warrant. It would have been a better procedure to have included this information in the affidavit.
 {¶ 8} German moved to suppress all the items seized under the search warrant. He claimed that the warrant (1) was not sufficiently particular concerning what was to be seized, (2) was a general warrant and was therefore unconstitutional, and (3) was based on stale and remote facts, and that the search was conducted outside the scope of the warrant, which only called for the seizure of handguns and ammunition used in the Beckroege shooting.
 {¶ 9} The trial court heard arguments from both sides on this motion and granted German's motion to suppress. It stated that the affidavit was "lacking to render official belief in its validity." The trial court also noted that the affidavit did not adequately spell out why there was probable cause to believe that there would be any evidence linked to the Beckroege shooting at German's home. "The affidavit never established a nexus between the evidence sought and the premises to be searched, other than the inference, the mere inference that the defendant lived at the location sought to be searched." The trial court also stated that the good-faith exception to searches based on invalid warrants did not apply.
 {¶ 10} The state has appealed; it assigns as error only that the trial court should not have granted the motion to suppress. The state now argues that the affidavit established probable cause that the handgun and ammunition sought by police would be found at the home, or that, in the alternative, the officers were acting under the good-faith exception.
 II. Sufficient Probable Cause? {¶ 11} The answer to whether the warrant was based on stale information, was not particular enough, or was a general warrant does not affect the outcome in this case. But we address the staleness issue because we believe it has intrinsic legal value. While German's particularity argument may have some merit, the point is moot because the good-faith exception would still apply, and we do not believe that there would be any benefit to discuss it further.
 {¶ 12} In determining whether a search warrant was adequately supported by probable cause, the reviewing court's duty is merely to ensure that the issuing magistrate or judge had a substantial basis for concluding that probable cause existed.[1] Neither a trial court nor an appellate court should substitute its judgment for the magistrate's by conducting a de novo review of whether the affidavit contained sufficient probable cause.[2] This standard of review grants a great deal of deference to the issuing magistrate.[3]
 {¶ 13} To establish probable cause to issue a search warrant, an affidavit must contain sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched.[4] And probable cause exists when a reasonably prudent person would believe that there is a fair probability that the place to be searched contains evidence of a crime.[5]
 {¶ 14} Because probable cause to search is concerned with facts relating to a presently existing condition, a magistrate or judge must consider whether the information supporting the issuance of a warrant has grown stale.[6] Therefore, the law of search and seizure requires that an affidavit for a search warrant present timely information.[7]
 {¶ 15} No arbitrary time limit dictates when information becomes stale.[8] The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched.[9]
 {¶ 16} But not all evidence is created equal. A magistrate or judge must examine each case based on its individual circumstances.[10] The best explanation of the reasoning behind this rule that we have found comes from a Maryland court of special appeals:
 {¶ 17} "The ultimate criterion in determining the degree of evaporation of probable cause, however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed."[11]
 {¶ 18} The situation in the present case is similar to one the Tenth Appellate District faced in State v. Barnes.[12] There, Barnes was allegedly running a "boot joint," or an illegal after-hours bar, out of his apartment. The affidavit supporting the warrant did not include observations of ongoing criminal activities. Rather, the affidavit merely stated that visual surveillance, along with a controlled purchase of alcohol, confirmed that the boot joint was open on one specific day ten days before the issuance of the warrant. It did not describe how often or when the officers had observed the foot traffic to and from the apartment building. The court held that the ten-day delay had rendered the information stale and concluded that the issuing judge had not had a substantial basis for a probable-cause finding.
 {¶ 19} Unlike in Barnes, officers in this case did not even observe any possible criminal activity going on at German's home. The description of the surveillance was broad and did not give any specific dates. For all we can tell from the affidavit, German may not have even been at his residence for over a week.
 {¶ 20} But we are supposed to give the issuing magistrate or judge a great degree of deference and not undertake a de novo review.[13] And we need not determine whether the information was so stale as to eliminate probable cause. Even if it had been stale, the good-faith exception applies and is dispositive.
 III. The Good-Faith Exception {¶ 21} The state argues that the officers conducting the search were acting in objectively reasonable reliance on the search warrant and that the evidence therefore should not have been suppressed. The state is right.
 {¶ 22} "The Fourth Amendment exclusionary rule should not be applied so as to bar the use * * * of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause."[14] This is the so-called "good-faith exception," and it exists because the purpose of the exclusionary rule is to deter police from violating people's constitutional rights.[15] So where the police have acted in good faith, the rationale for deterrence is no longer present, and the evidence should not be suppressed.[16]
 {¶ 23} But there are exceptions to the exception. In certain limited circumstances, the good-faith exception does not apply and suppression remains an appropriate remedy: (1) the magistrate or judge has been misled by false information that the affiant knew or should have known was false; (2) the issuing magistrate or judge has abandoned the judicial role; (3) the police have relied on a warrant based on an affidavit so lacking indicia of probable cause that no official could reasonably believe in its existence; and (4) the warrant is so facially deficient that the officers executing it cannot reasonably presume that it is valid.[17]
 {¶ 24} Here, there are no allegations that the municipal judge was misled by false information or that he abandoned his judicial role. Also, we cannot say that the warrant was so facially deficient that the executing officers could not have presumed it was valid. It was not a general warrant because it did list specific items to be seized. The officers' seizure of items outside the scope of the warrant did not affect their good-faith reliance on the warrant in the first place.
 {¶ 25} So the only possible exception that remains turns on whether the affidavit was so devoid of sufficient indicia of probable cause that no official could have possibly believed in its existence. The trial court seemed to suggest that this exception applied because it stated that there was no evidence in the affidavit that spelled out why there was probable cause to believe the handguns and ammunition were ever at German's home.
 {¶ 26} While the affidavit may have contained stale information, we cannot say that it was completely devoid of indicia of probable cause. It is at least arguable that there was a fair probability that a handgun and ammunition from a shooting would be found in German's home or van. In fact, a 9-mm handgun was found during the search.
 {¶ 27} The Tenth Appellate District faced a similar situation inBarnes.[18] There, the court decided that the good-faith exception did not apply because the officer who swore to the affidavit had withheld exculpatory information that would have eliminated probable cause. There are no such claims in this case, and the good-faith exception applies.
 {¶ 28} Although it might not be easy to determine when an affidavit demonstrates that probable cause exists, we must resolve marginal or doubtful cases according to the preference accorded to warrants.[19]
 {¶ 29} Our decision is based more on the deference due to an issuing judge than on our confidence in the information contained in the warrant. The officers acted with reasonable reliance on a search warrant issued by a detached and neutral magistrate. We cannot say that the suppression of the evidence obtained from the search would have served any purpose.
 {¶ 30} Accordingly, we reverse the trial court's judgment and remand this case for proceedings consistent with this decision.
Judgment reversed and cause remanded.
Doan, P.J., and Sundermann, J., concur.
[1] See State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640.
[2] See id.
[3] See State v. Klein (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141.
[4] See United States v. Ventresca (1965), 380 U.S. 102, 85 S.Ct. 741.
[5] See Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317.
[6] See United States v. Spikes (C.A.6, 1998), 158 F.3d 913, 923.
[7] See State v. Jones (1991), 72 Ohio App.3d 522, 526,595 N.E.2d 485.
[8] See State v. Hollis (1994), 98 Ohio App.3d 549, 554,649 N.E.2d 11; State v. Jones (1992), 72 Ohio App.3d 522, 526,595 N.E.2d 485.
[9] See id.
[10] See State v. Jones (1991), 72 Ohio App.3d 522, 526,595 N.E.2d 485; Sgro v. U.S. (1932), 287 U.S. 206, 53 S.Ct. 138.
[11] Andresen v. State (1975), 24 Md.App. 128, 172, 331 A.2d 78, affirmed (1976), 427 U.S. 463, 96 S. Ct. 2737.
[12] (Mar. 16, 2000), 10th Dist. No. 99AP-572.
[13] See State v. Klein (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141.
[14] State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph three of the syllabus; see, also, United States v. Leon (1984),468 U.S. 897, 104 S.Ct. 3405.
[15] See United States v. Leon (1984), 468 U.S. 897, 104 S.Ct. 3405.
[16] See id.
[17] See State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640;United States v. Leon (1984), 468 U.S. 897, 104 S.Ct. 3405.
[18] State v. Barnes (Mar. 16, 2000), 10th Dist. No. 99AP-572.
[19] See State v. George (1989), 45 Ohio St.3d 325, 544 N.E.2d 640;United States v. Ventresca (1965), 380 U.S. 102, 85 S.Ct. 741.