The STATE of Ohio, Appellee,

v.

ANDREWS, Appellant.

[Cite as *State v. Andrews,* 171 Ohio App.3d 332, 2007-Ohio-2013.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060545.

Decided April 27, 2007.

**334**

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Ronald W. Springman Jr., Assistant Prosecuting Attorney, for appellee.

Sirkin Pinales & Schwartz, L.L.P., H. Louis Sirkin, Candace C. Crouse, and Clayton G. Napier, for appellant.

SYLVIA S. HENDON, Judge.

{¶ 1} Defendant-appellant, Rob Andrews, was convicted upon a no-contest plea of attempted importuning and attempted tampering with evidence. In return for Andrews's plea, the state dismissed charges of pandering sexually oriented matter involving a minor and illegal use of a minor in nudity-oriented material or performance.

{¶ 2} Andrews now appeals. In two assignments of error, he argues that the trial court erred in overruling his motion to dismiss the charge of attempted importuning and in denying his motion to suppress.

### Factual Background

{¶ 3} On November 16, 2004, Hamilton County Sheriff's Detective Rick Sweeney received a telephone call from Cincinnati Enquirer reporter Sharon Coolidge. Coolidge directed Sweeney to a website operated by the organization "Perverted Justice." Perverted Justice is a foundation "that is dedicated to exposing adults

who use the Internet to seek sexual activity with children." [1] The foundation recruits and trains adult volunteers to pose as children in Internet chatrooms. The volunteers wait for adults to contact them and engage them in sexually oriented conversations. Perverted Justice often posts transcripts of the volunteers' conversations with Internet predators on its website.

{¶ 4} Coolidge informed Detective Sweeney that Perverted Justice's website featured a sexually explicit conversation between a Cincinnati attorney and a Perverted Justice volunteer posing as a 13–year–old girl. The Cincinnati attorney, whom Sweeney was later able to identify as Andrews, communicated under the screen name "manofdarkneedsl951." [2] The Perverted Justice volunteer operated under the screen name "rachel_west90." Sweeney viewed the conversations that Coolidge had identified. The following are excerpts from a conversation between "manofdarkneedsl951" and "rachel_west90" posted on Perverted Justice's website. [3]

{¶ 5} "Rachel_west90: where do u live?

{¶ 6} "Manofdarkneedsl951: ohio * * *

{¶ 7} "Rachel_west90: Im 13 is that ok?

{¶ 8} "Manofdarkneedsl951: yes

{¶ 9} "Manofdarkneedsl951: you like to see men jack off?

{¶ 10} "Rachel_west90: really?

{¶ 11} "Manofdarkneedsl951: yes * * *

{¶ 12} "Manofdarkneedsl951: you masterbate

{¶ 13} "Rachel_west90: yea * * *

{¶ 14} "Manofdarkneedsl951: you have pics?

{¶ 15} "Rachel_west90: I have 2

{¶ 16} "Manofdarkneedsl951: send?

{¶ 17} "Rachel_west90: ok * * *

{¶ 18} "Rachel_west90: can you turn on a light

---

1. *United States v. Kaye* (E.D.Va.2006), 451 F.Supp.2d 775, 777, fn. 3.

2. " 'A screen name is an appellation used to identify oneself in a chat room or when sending instant messages to another computer user. Although it can be the user's real name, it is more often a pseudonym.' " Id. at 776, fn. 1, quoting *United States v. Mitchell* (C.A.7, 2003), 353 F.3d 552, 554, fn. 3.

3. The conversation contains various abbreviations and typographical errors. For the sake of clarity, we have not inserted "sic" after each error.

{¶ 19} "Rachel_west90: I can hardly see

{¶ 20} "Rachel_west90: wow * * *

{¶ 21} "Manofdarkneedsl951: you want to meet an older man?

{¶ 22} "Rachel_west90: maybe * * *

{¶ 23} "Rachel_west90: whats your e mail

{¶ 24} "Manofdarkneedsl951: robnaq@yahoo.com

{¶ 25} "Rachel_west90: ok hold on I'll e mail it [her picture] * * *

{¶ 26} "Manofdarkneedsl951: which are you? [referring to the picture]

{¶ 27} "Rachel_west90: Im on the right. I used to live in Texas

{¶ 28} "Manofdarkneedsl951: I like

{¶ 29} "Rachel_west90: ty

{¶ 30} "Manofdarkneedsl951: are you a virgin?

{¶ 31} "Rachel_west90: yea

{¶ 32} "Manofdarkneedsl951: you want to change that?

{¶ 33} "Rachel_west90: maybe

{¶ 34} "Rachel_west90: will u be gentls?

{¶ 35} "Manofdarkneedsl951: have you done anything sexually?

{¶ 36} "Manofdarkneedsl951: yes

{¶ 37} "Rachel_west90: just kissed * * *

{¶ 38} "Rachel_west90: whats your name?

{¶ 39} "Manofdarkneedsl951: rob * * *

{¶ 40} "Manofdarkneedsl951: you close to cumming

{¶ 41} "Rachel_west90: no, Ive just been watching u

{¶ 42} "Rachel_west90: are u?

{¶ 43} "Manofdarkneedsl951: I can wait for you

{¶ 44} "Manofdarkneedsl951: you have any pubic hair?

{¶ 45} "Rachel_west90: wanna talk on the phone for a min?

{¶ 46} "Rachel_west90: just a little

{¶ 47} "Manofdarkneedsl951: number?

{¶ 48} "Rachel_west90: Id have to call u. My mom has caller ID

{¶ 49} "Manofdarkneedsl951: 513–378–6608"

{¶ 50} And the following are excerpts from a subsequent conversation between manofdarkneedsl951 and rachel_west90.

{¶ 51} "Manofdarkneedsl951: you want to see me cum? * * *

{¶ 52} "Manofdarkneedsl951: are you nude?

{¶ 53} "Rachel_west90: no * * *

{¶ 54} "Rachel_west90: why do u like younger gurls

{¶ 55} "Manofdarkneedsl951: nice and tight * * *

{¶ 56} "Manofdarkneedsl951: want to suck me?

{¶ 57} "Rachel_west90: i never done that

{¶ 58} "Manofdarkneedsl951: want to? * * *

{¶ 59} "Manofdarkneedsl951: have you seen a man cum? * * *

{¶ 60} "Manofdarkneedsl951: i want to f* *k you to

{¶ 61} "Rachel_west90: will u come out here to where I am? * * *

{¶ 62} "Manofdarkneedsl951: will you do all if i do

{¶ 63} "Rachel_west90: will u use a condom? * * *

{¶ 64} "Manofdarkneedsl951: yes

{¶ 65} "Manofdarkneedsl951: i came"

{¶ 66} After viewing these conversations, Detective Sweeney verified that Andrews was, in fact, manofdarkneedsl951. We discuss the steps that Sweeney took to acquire this verification in detail below. Sweeney obtained and executed two search warrants during his investigation, and Andrews was arrested and indicted for two counts of pandering sexually oriented matter involving a minor, illegal use of a minor in nudity-oriented material or performance, tampering with evidence, and attempted importuning.

{¶ 67} Andrews filed a motion to suppress all evidence seized during the execution of the two search warrants, arguing that the warrants had been issued without probable cause. He additionally filed a motion to dismiss the charge of attempted importuning, which he asserted was not a criminal act. The trial court overruled both motions.

*Attempted Importuning*

### 1. Attempted Importuning Is a Criminal Offense

{¶ 68} In his first assignment of error, Andrews argues that the trial court erred in denying his motion to dismiss the charge of attempted importuning. Andrews asserts that the offense of importuning is itself an attempt crime.

Therefore, he argues, attempted importuning is not a crime because it would amount to an attempt of an attempt.

{¶ 69} Importuning is defined in R.C. 2907.07. R.C. 2907.07(D), the subdivision applicable to this case, provides the following:

{¶ 70} "No person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:

{¶ 71} "(1) The other person is thirteen years of age or older but less than sixteen years of age, the offender knows that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the other person.

{¶ 72} "(2) The other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age."

{¶ 73} To support his argument that the offense of attempted importuning amounts to an attempt of an attempt, Andrews relies on *State v. Harper*,[4] a case from the Third Appellate District. In *Harper*, the court analyzed the offense of attempted intimidation of a witness. The court reasoned that because R.C. 2921.04, the statute that proscribes the offense of intimidation of a witness, states that "no person * * * shall *attempt* to influence, intimidate or hinder * * * [a] witness involved in a criminal action," it prohibited both actual and attempted intimidation.[5] The court concluded that attempted intimidation of a witness was not a cognizable crime because it involved an attempt to commit an attempt.[6]

{¶ 74} Andrews additionally relies on *State v. Anderson*,[7] a 1979 Lucas County Municipal Court decision that held that the offense of soliciting was an attempt crime. The soliciting statute, R.C. 2907.24, provides that "[n]o person shall solicit another to engage with such other person in sexual activity for hire." The *Anderson* court determined that the offense of soliciting was nothing more than

4. *State v. Harper*, 3rd Dist. No 1–05–79, 2007-Ohio-109, 2007 WL 92380.

5. (Emphasis added.) Id. at ¶ 11.

6. Id. at ¶ 13.

7. *State v. Anderson* (1979), 62 Ohio Misc. 1, 16 O.O.3d 185, 404 N.E.2d 176.

an attempt to engage in the offense of prostitution, defined by R.C. 2907.25 as engaging in sexual activity for hire. The court thus concluded that attempted soliciting was not a cognizable offense.

{¶ 75} Andrews also directs us to *Seo v. Austintown Twp.*,[8] which set aside a massage business's license revocation where an employee had been convicted of attempted soliciting. The Seventh Appellate District, apparently persuaded by *Anderson,* held that the revocation could not have been grounded on an attempted soliciting offense. The court held that an attempted-soliciting charge criminalized the "attempt to attempt to engage in the offense of prostitution" and that such an offense did not exist under Ohio law.[9]

{¶ 76} We are not persuaded by Andrews's arguments. Unlike the offense of intimidation of a witness discussed in *Harper,* importuning is not defined by R.C. 2907.07 in terms of an attempt. The word "attempt" appears nowhere in the language of the statute. The offense of importuning prohibits the soliciting of certain persons to engage in sexual activity, not the attempt to solicit such persons.

{¶ 77} And we are similarly not persuaded by the limited reasoning in *Anderson.* Although importuning requires the soliciting of sexual activity, a charge of importuning does not involve an attempt to engage in the sexual activity that has been solicited. Rather, for the offense of importuning, "the harm is in the asking."[10] Consequently, we hold that the offense of attempted importuning does not amount to an attempt of an attempt and that it is a cognizable crime. And in the present case, the offense was properly charged as such.

{¶ 78} Ohio's attempt law is codified in R.C. 2923.02, which provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense."[11] A criminal attempt occurs when " 'one purposely does or omits to do anything which is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.' "[12] A substantial step involves conduct

---

8. *Seo v. Austintown Twp.* (1998), 131 Ohio App.3d 521, 722 N.E.2d 1090.

9. *Seo,* 131 Ohio App.3d at 528, 722 N.E.2d 1090.

10. *State v. Tarbay,* 157 Ohio App.3d 261, 2004-Ohio-2721, 810 N.E.2d 979, ¶ 17, citing *State v. Bolden,* 2nd Dist. No. 19943, 2004-Ohio-2315, 2004 WL 1043317, ¶ 37.

11. R.C. 2923.02(A).

12. *State v. Tarbay,* 157 Ohio App.3d 261, 2004-Ohio-2721, 810 N.E.2d 979, ¶ 20, quoting *State v. Woods* (1976), 48 Ohio St.2d 127, 2 O.O.3d 289, 357 N.E.2d 1059.

that is "strongly corroborative of the actor's criminal purpose." [13]

{¶ 79} Andrews solicited sexual activity from a person whom he believed to be 13 years of age. He clearly and unequivocally took a substantial step toward the commission of the offense of importuning. But the person whom Andrews solicited was not an actual 13–year–old. Nor was the person a law-enforcement officer posing as a 13–year–old. Instead, Andrews solicited sexual activity from a civilian adult posing as a 13–year–old on behalf of the Perverted Justice Organization. Soliciting from a civilian adult who is not a law-enforcement officer is not directly proscribed by R.C. 2907.07(D).

{¶ 80} The fact that Andrews solicited a civilian adult, rather than a person identified in the statute, is the only factor that made his actions an attempted criminal act, as opposed to a completed offense. We note that "[i]t is no defense to a charge under this section that, in retrospect, commission of the offense that was the object of the attempt was either factually or legally impossible under the attendant circumstances, if that offense could have been committed had the attendant circumstances been as the actor believed them to be." [14] Andrews believed that he had been communicating with a 13–year–old female. And he clearly solicited sexual activity from the person whom he believed to be 13. Had the circumstances been as he believed, Andrews would have committed the offense of importuning.

■ {¶ 81} Consequently, we hold that a defendant may be charged with attempted importuning under R.C. 2907.07(D) when the sole factor making the crime an attempted offense is the fact that the victim is not a child between 13 and 15 years of age or a law-enforcement officer posing as a child between 13 and 15 years of age, but rather is an adult civilian posing as a child who is 13 to 15 years of age.

{¶ 82} Our conclusion is supported by case law from several states. In *Wisconsin v. Robins,*[15] the Supreme Court of Wisconsin considered whether Wisconsin's child-enticement statute could support a charge of attempt when no actual child victim was involved. Robins had engaged in sexually explicit online conversations with a person whom he had believed to be a 14–year–old boy, but who was actually an agent from the Department of Justice posing as a 14–year–

---

**13.** *State v. Woods* (1976), 48 Ohio St.2d 127, 2 O.O.3d 289, 357 N.E.2d 1059, paragraph one of the syllabus, overruled on other grounds in *State v. Downs* (1977), 51 Ohio St.2d 47, 5 O.O.3d 30, 364 N.E.2d 1140.

**14.** R.C. 2923.02(B).

**15.** *Wisconsin v. Robins,* 253 Wis.2d 298, 2002 WI 65, 646 N.W.2d 287.

old.[16] Wisconsin's child-enticement statute prohibited certain actions against a child less than 18 years of age. But unlike R.C. 2907.07, the Wisconsin child-enticement statute prohibited not only the completed act of child enticement, but attempted acts as well.[17]

{¶ 83} Like Andrews, Robins argued that he been charged with "an 'attempt to attempt a crime.'"[18] The Wisconsin Supreme Court disagreed and held that "the offense of attempted child enticement * * * may be charged where the intervening extraneous factor that makes the offense an attempted rather than completed crime is the fact that unbeknownst to the defendant, the 'victim' is not an actual child, but, rather, an adult government agent posing as a child."[19] The court thus concluded that child enticement could be charged as an attempt even though the offense had been defined in terms of an attempt.

{¶ 84} *Adams v. Wyoming*,[20] a case from the Wyoming Supreme Court, is also persuasive. Adams had been convicted of violating two statutes that prohibited various types of sexual conduct either with a child or with a child under the age of 16.[21] Adams had engaged in sexually explicit online conversations with a person he had believed to be a 15–year–old female, but who was actually a law-enforcement officer.[22]

{¶ 85} Adams argued on appeal that the trial court had erred in denying his motion to dismiss because no actual minor had been involved. After noting that the statutes that Adams had been convicted of violating did not criminalize the attempt to commit the crimes described therein,[23] the Wyoming Supreme Court held that "the presence of a minor victim is not a requisite for a conviction of attempted solicitation of a minor under [the statutes that Adams had been charged with violating]."[24]

---

16. Id. at ¶ 4.

17. Id. at ¶ 25. See, also, Wis.Stat. 948.07.

18. Id. at ¶ 21.

19. Id. at ¶ 45.

20. *Adams v. Wyoming*, 2005 WY 94, 117 P.3d 1210.

21. Id. at ¶ 12.

22. Id. at ¶ 3.

23. Id. at ¶ 12.

24. Id. at ¶ 16.

{¶ 86} An Indiana appellate court addressed this issue in *Laughner v. Indiana*.[25] Laughner had engaged in online conversations of a sexual nature with, and had attempted to meet, a person he believed to be a 14–year–old boy. But the person Laughner had been communicating with was actually a law-enforcement officer. Laughner was convicted of attempted child solicitation. On appeal, Laughner argued that he could not have committed attempted child solicitation because he had not communicated with a child. The court disagreed and held that attempted child solicitation is committed when a defendant "engages in an overt act that constitutes a substantial step toward soliciting someone believed to be a child under fourteen to engage in sexual activity, even if it turns out the solicited person is an adult."[26]

{¶ 87} Not only the application of the law, but ordinary common sense dictates our conclusion that attempted importuning may be charged when the defendant believes that he has solicited a child of a certain age, but the reality is that the person solicited is not one described in the statute defining importuning.

{¶ 88} Further, strong public policy has resulted in many states enacting child-enticement and importuning statutes to protect children from people like Andrews, those who troll the Internet searching for susceptible victims. It would surely frustrate the intent of Ohio's legislative efforts in this regard if Andrews were to be successful in his argument that he could not be convicted of attempted importuning despite his blatant attempts to solicit one he believed to be a minor for the purpose of engaging in sexual activity.

{¶ 89} As the United States Supreme Court has noted, "[t]he sexual abuse of a child is a most serious crime and an act repugnant to the moral instincts of a decent people."[27] And this exploitation and abuse of children has been facilitated by the access the Internet provides. While the Internet has indisputably advanced modern communication, it has also provided people who abuse and molest children with a way to reach their victims in a method that is difficult to monitor. These factors give good reason for criminalizing the attempted importuning of a civilian adult whom the offender believes to be a child.

{¶ 90} In summary, we conclude that attempted importuning does not constitute an attempt of an attempt and a defendant may be charged with attempted importuning under R.C. 2907.07(D) when the defendant would have committed the offense of importuning but for the fact that the victim was a person not

---

25. *Laughner v. Indiana* (Ind.App.2002), 769 N.E.2d 1147.

26. Id. at 1155.

27. *Ashcroft v. Free Speech Coalition* (2002), 535 U.S. 234, 244, 122 S.Ct. 1389, 152 L.Ed.2d 403.

identified in the statute. The trial court did not err in overruling Andrews's motion to dismiss on the grounds that attempted importuning is not a criminal offense.

### 2. The Offense of Attempted Importuning Is Not Unconstitutional

{¶ 91} In his first assignment of error, Andrews additionally argues that the trial court erred in overruling his motion to dismiss because attempted importuning criminalizes speech that is presumptively protected by the First Amendment.

{¶ 92} Relying on the United States Supreme Court's decision in *Ashcroft v. Free Speech Coalition*,[28] Andrews argues that his online communication was entitled to unfettered First Amendment protection because it did not involve an actual minor. We disagree.

{¶ 93} This court has already addressed whether the offense of importuning under R.C. 2907.07 infringes upon the right of free speech guaranteed by the First Amendment in the case of *State v. Tarbay*.[29] Like Andrews, Tarbay had communicated online with a person whom he had believed to be a 13–year–old girl. But Tarbay had actually been communicating with a Hamilton County deputy sheriff. Among other offenses, Tarbay was convicted of five counts of importuning.

{¶ 94} When evaluating Tarbay's claim that the offense of importuning infringed upon his right to free speech, we recognized that the First Amendment does protect discussion about and soliciting sexual activity between two adults.[30] But we also noted that the state had a compelling interest in protecting minors from unlawful sexual contact and that the offense of importuning "[was] aimed not at preventing the expression of ideas, but at 'prohibiting adults from taking advantage of minors and the anonymity and ease of communicating through telecommunications devices, especially the Internet and instant messaging devices, by soliciting minors to engage in sexual activity.' "[31] With these concerns in mind, we concluded that "there is simply '[no] First Amendment right to attempt to persuade minors to engage in illegal sex acts.' "[32]

---

28. Id.

29. *State v. Tarbay*, 157 Ohio App.3d 261, 2004-Ohio-2721, 810 N.E.2d 979, at ¶ 10.

30. Id. at ¶ 9.

31. Id. at ¶ 13, quoting *State v. Snyder*, 155 Ohio App.3d 453, 2003-Ohio-6399, 801 N.E.2d 876, ¶ 19.

32. Id. at ¶ 17, quoting *United States v. Bailey* (C.A.6, 2000), 228 F.3d 637, 639.

{¶ 95} The *Tarbay* court clearly and correctly determined that Ohio's importuning statute does not infringe upon the First Amendment's right to freedom of speech. Consequently, Andrews's argument is without merit.

{¶ 96} Because attempted importuning is a cognizable offense and does not infringe on the First Amendment, we conclude that the trial court did not err in overruling Andrews's motion to dismiss. The first assignment of error is overruled.

## Motion to Suppress

{¶ 97} In his second assignment of error, Andrews argues that the trial court erred in overruling his motion to suppress the evidence obtained from the execution of the two search warrants issued to Detective Sweeney. Andrews argues that no probable cause existed to support the issuance of the first warrant. And he argues that the second warrant was obtained based on evidence illegally seized during the execution of the first warrant. He does not directly attack the issuance of the second warrant, but raises a "fruit of the poisonous tree" argument.

{¶ 98} This court's review of a suppression ruling involves mixed questions of law and fact.[33] We must accept the trial court's finding of facts if they are supported by competent, credible evidence. But we determine de novo, without deference to the trial court, whether the facts satisfy the applicable legal standard.[34]

{¶ 99} When determining whether probable cause existed to support the issuance of a search warrant, this court must accord great deference to the issuing magistrate.[35] Our duty is to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed.[36]

{¶ 100} Probable cause is established when an affidavit "contain[s] sufficient information to allow a magistrate to draw the conclusion that evidence is likely to be found at the place to be searched."[37]

{¶ 101} Following our review of the record, we conclude that the first search warrant obtained by Detective Sweeney was clearly supported by probable cause.

---

33. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

34. Id.

35. *State v. George* (1989), 45 Ohio St.3d 325, 330, 544 N.E.2d 640.

36. See id.

37. *State v. German*, 1st Dist. No. C–040263, 2005-Ohio-527, 2005 WL 323688, ¶ 13.

Sweeney had gone to great lengths to independently corroborate the information that he had obtained from Perverted Justice.[38] Sweeney's affidavit provided substantial evidence demonstrating that evidence was likely to be found at the place to be searched, including evidence linking Andrews to the screen name manofdarkneedsl951.

{¶ 102} Sweeney's affidavit stated that during his conversation with rachel_west90, manofdarkneedsl951 had provided the telephone number 513–378–6608. A Hamilton County Sheriff's detective contacted Cincinnati Bell and obtained information about the subscriber assigned to this telephone number. The subscriber was a Robert Andrews who resided at 3045 Werk Road in Cincinnati, Ohio. A high-speed Internet access was also assigned to the account. A check of the Hamilton County Auditor's records revealed that the property on 3045 Werk Road was owned by Patricia Ann Andrews.

{¶ 103} Sweeney's affidavit further averred that manofdarkneedsl951 had stated that his e-mail address was robnaq@yahoo.com. Information received from Yahoo revealed that the login name for this e-mail address was robnaq. Yahoo's information also established that the subscriber to this email account was J. Robert Andrews, and it provided an alternate email address of Andrews@sandg.com. The subscriber had provided Yahoo with the following information: the address 3045 Werk Road, Cincinnati Ohio, 45211, the telephone number 513–661–6146, the birth date March 24, 1951, and the business address 2662 Madison, Cincinnati, Ohio 45208.

{¶ 104} The information provided by Yahoo additionally revealed two Internet Protocol ("IP") addresses that had been used by robnaq, 66–161–176–41 and 216–196–129–185. It was determined that the IP address 66–161–176–41 was obtained through Cincinnati Bell and was assigned to John R. Andrews at 3045 Werk Road, Cincinnati, Ohio 45211. The IP address 216–196–129–185 was also issued through Cincinnati Bell and was assigned to [the name of a law firm] at 2662 Madison Road, Cincinnati, Ohio, 45208.

{¶ 105} Sweeney's affidavit stated that detectives had confirmed that Andrews had been employed as a defense attorney at the named law firm, located at 2662 Madison Road, Cincinnati, Ohio 45208, and that Andrews resided at 3045 Werk Road, Cincinnati, Ohio 45211. The affidavit also contained a summary of, and various excerpts from, the conversations between manofdarkneedsl951 and rachel_west90. And Sweeney attached a copy of these conversations to his affidavit, along with the various information received from Cincinnati Bell and Yahoo.

---

38. *United States v. Tuttle* (C.A.6, 2000) 200 F.3d 892, 894.

{¶ 106} These facts demonstrated that the issuing judge had a substantial basis for determining that there was probable cause to issue a search warrant. The affidavit sufficiently corroborated information linking Andrews to the screen name manofdarkneedsl951, and it clearly supported the conclusion that a crime had been committed and that the place to be searched would contain evidence of such crime.

{¶ 107} And even if Sweeney's affidavit had been lacking in probable cause, the good-faith exception to the exclusionary rule would not have barred the evidence seized. The good-faith exception was recognized by the United States Supreme Court in *United States v. Leon.*[39]

{¶ 108} In *Leon,* the court acknowledged that the exclusionary rule operates as a deterrent to safeguard the Fourth Amendment rights prohibiting unlawful searches and seizures and to deter police from violating these rights.[40] But the court recognized that when the police have acted in good faith, exclusion of evidence does not serve as a deterrent. Accordingly, the court determined that "[t]he Fourth Amendment exclusionary rule should not be applied so as to bar the use * * * of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid." [41]

{¶ 109} The good-faith exception to the exclusionary rule thus applies unless one of the following exceptions is present: "(1) the magistrate or judge has been misled by false information that the affiant knew or should have known was false; (2) the issuing magistrate or judge has abandoned the judicial role; (3) the police have relied on a warrant based on an affidavit so lacking indicia of probable cause that no official could reasonably believe in its existence; and (4) the warrant is so facially deficient that the officers executing it cannot reasonably presume that it is valid." [42]

{¶ 110} In this case, the record clearly demonstrates that the law-enforcement officers involved had acted in good faith. The record further demonstrates that the issuing judge had not been misled by false information and had not abandoned the judicial role. Moreover, given our conclusion that Detective Sweeney's affidavit was amply supported by probable cause, we cannot conclude that no

---

39. *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677.

40. Id. at 906, 104 S.Ct. 3405, 82 L.Ed.2d 677.

41. Id.

42. *State v. German,* 2005-Ohio-527, 2005 WL 323688, at ¶ 23.

officer would reasonably have relied on the affidavit or that the warrant was facially deficient.

{¶ 111} Consequently, had we not determined that the search warrant was supported by probable cause, the good-faith exception would have applied to prevent exclusion of the evidence.

{¶ 112} Because we have determined that the first search warrant obtained by Detective Sweeney was supported by probable cause, we conclude that all evidence seized during its execution was obtained lawfully. Thus, evidence seized during the execution of the second warrant was not "fruit of the poisonous tree" and was properly held admissible.

{¶ 113} The trial court did not err in denying Andrews's motion to suppress. The second assignment of error is overruled, and the judgment of the trial court is, therefore, affirmed.

Judgment affirmed.

PAINTER, P.J., and CUNNINGHAM, J., concur.