**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 17a0087n.06

**Case No. 16-3498**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 31, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BEN FRY, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| OFFICER RON ROBINSON, Goshen Township | ) | DISTRICT OF OHIO |
| Police Department, | ) | |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | ) | O P I N I O N |

BEFORE:     COLE, Chief Judge; COOK and WHITE, Circuit Judges.

COLE, Chief Judge.    In this false arrest and malicious prosecution dispute, Plaintiff-Appellee Ben Fry brought suit against Defendant-Appellant Ron Robinson under 42 U.S.C. § 1983.  In March 2014, the police arrested Fry under two outstanding arrest warrants for felony charges of importuning (solicitation of a minor).  The warrants were based on two complaints and affidavits that Robinson, a police officer, submitted to the county clerk's office.  Robinson submitted the complaints and affidavits following an undercover operation in 2012 during which Robinson, posing as a fourteen-year-old girl named Ann Downer, exchanged a series of sexual messages online and through texts with Fry.  The case against Fry was later dismissed, and Fry initiated this suit.  Robinson sought summary judgment based on qualified immunity, but the district court denied the motion.

On appeal, Robinson argues that the district court erred in denying his motion after finding that he lacked probable cause, asserting that even if Fry did not initiate the discussions about sexual intercourse, he separately initiated other conversations regarding sexual activity that qualify as importuning. Robinson further asserts that the submitted affidavits contained sufficient information to form a basis for the arrest warrants and prosecution, and that the court clerk's approval of the warrants established the existence of probable cause. After reviewing the district court's denial of the motion for summary judgment, we affirm, in part, with respect to the false arrest claim, and reverse, in part, with respect to the malicious prosecution claim.

## I. BACKGROUND

In the spring of 2012, Robinson, an officer in Goshen Township, Ohio, met a fourteen-year-old girl, J.P., at a children's hospital, where she was being treated for psychological issues related to previous sexual relationships she had with adult men she met online. After receiving her consent, Robinson began using J.P.'s social media accounts to conduct an undercover investigation of adult men soliciting minors for sex. Using an account under the pseudonym of "Ann Downer," Robinson began communicating with Fry in March 2012 on the website myYearbook.com. These messages continued through Facebook and text messages until July 2012.

During these exchanges, Robinson and Fry discussed masturbation, watching pornography, and other sexual topics. On July 3, 2012, Robinson told Fry that Downer was "only 14" and Fry responded "oh . . . I thought [yo]u were 18." (Transcript, R. 14-1, PageID 269.) Three days later, on Friday, July 6, 2012, Robinson messaged Fry again, during which the following exchange occurred.

> **Downer:** i want you dont you want me or want to be in me lol ☺
>
> **Fry:** yes
>
> **Downer:** u bringing protection
>
> **Fry:** maybe
>
> **Downer:** please I want you and I need it you wont regret it
>
> **Downer:** plus my oral sex, you will love I promise
>
> **Fry:** why we need protection?
>
> **Downer:** cause i dont want pregnant and u dont want to be dady do you
>
> **Fry:** I can pull out or somethin
>
> **Downer:** ok so long as u pull out my mom is working tuesday night from 7p to 330am if u wanna come over
>
> **Fry:** ok
>
> **Fry:** you going to call me then or what?
>
> **Fry:** ?
>
> **Downer:** yes i will call you then i want u 4sure ☺

(*Id.* at 272–73.)

Two days later, on July 8, 2012, Fry messaged in the early morning hours for Downer to call him, and Robinson responded to the message that afternoon. During that conversation, they exchanged the following messages.

**Downer:** i wish i would have been up maybe i would have gotten lucky

**Fry:** at least on the phone, yea lol

**Downer:** y not in person lot better

**Fry:** cause i was drunk in bed lol

. . .

**Fry:** anyone play with that pussy this weekend? ☺

**Fry:** ?

**Downer:** no y wish u did but u cant make time lol

**Fry:** I have time

**Fry:** your not home alone or anything though

**Downer:** yes always home alone when moms at work told u that

**Downer:** we could have a lot of sex ☺ happy times

**Fry:** what day does she work next

**Fry:** monday?

**Downer:** tuesday night

**Fry:** ok

**Downer:** sound good u coming

**Fry:** yea

(*Id*. at 275–79.)

Two weeks later, Fry and Robinson texted one another, with Fry repeatedly asking to see a picture of Downer and Fry saying that he would not meet with Downer until he saw her on Skype. On July 26, 2012, Fry called the number he had been texting and learned that Robinson was a police officer. During the next couple of months, Fry had further communications with Robinson about the investigation before learning from his counsel that Robinson would be charging him with a crime.

On October 26, 2012, Robinson submitted a Pre-Indictment Offense Report ("POR") to the county prosecutor's office that stated Fry's actions as follows:

> On 4-5-12 Ben ask me if I could take 10 inches.
>
> Ben said on this same date he was jacking off and wanted me to talk naughty.
>
> 4-5-12 Ben told me about oral sex with a lesbian and sucking his dick.
>
> 7-6-12 I asked Ben if he wanted me and he said yes. I told him to bring protection and he said maybe. I told him I didn't want a baby and he said he would pull out or something.
>
> 7-8-12 Ben asked if someone played with my pussy this weekend.

(POR, R. 12-1, PageID 131.) The POR recommended bringing two felony importuning charges against Fry for the conversations that occurred on July 6 and 8. On February 19, 2013, Robinson received a letter from the prosecutor's office:

> Dear Sgt. Robinson,
>     After reviewing the above referenced case, our office believes this case should be re-filed as a misdemeanor in Municipal Court. The felony case will be dismissed.
>     • Re-file these cases in Municipal Court.
> Thank you for your prompt attention to this matter. . . .

(Letter, R. 12-5, PageID 149.)

Despite the letter, on March 5, 2013, Robinson filed two complaints and corresponding affidavits with the municipal court, charging Fry with felony importuning. The complaints and affidavits listed Fry's name and a statement that the offenses occurred on July 6 and 8. The complaints and affidavits also listed the statutory language of the importuning statute, Ohio Revised Code § 2907.07, as follows:

> (D) No person shall solicit another by means of a telecommunications device, as defined in section 2913.01 of the Revised Code, to engage in sexual activity with the offender when the offender is eighteen years of age or older and either of the following applies:
>
> …
>
> (2) The other person is a law enforcement officer posing as a person who is thirteen years of age or older but less than sixteen years of age, the offender believes that the other person is thirteen years of age or older but less than sixteen years of age or is reckless in that regard, and the offender is four or more years older than the age the law enforcement officer assumes in posing as the person who is thirteen years of age or older but less than sixteen years of age.

(Charging Papers, R. 12-2 & R. 12-3, PageID 135–36, 139–40.) Below the statutory language, the affidavits listed "To. Wit:" followed by J.P.'s initials and date of birth. (*Id.* at 135, 140.) Robinson did not provide any other information detailing how he knew of the offense or the specifics of what occurred on July 6 and 8. A municipal court clerk then issued an arrest warrant in connection with each complaint.

In March 2014, Fry was arrested under the two warrants after being pulled over by a Fairfax police officer. Fry was released on bond under his own recognizance. Afterwards, his preliminary hearing was postponed due to requests by both him and the prosecuting attorney's office. The prosecuting attorney's office offered Fry an opportunity to plead guilty to a

misdemeanor charge of telephone harassment, but Fry declined, and the prosecuting attorney dismissed the charges. The next day, on April 1, 2014, Robinson submitted a second POR, recommending that Fry be charged with *five* counts of felony importuning. The second POR listed the same offenses as the first POR, while also noting that Fry had asked Downer if she was aroused, the age of the oldest person with whom she had slept, whether she had ever had sex with a relative, and whom she had sex with recently. No action was ever taken with respect to Robinson's second POR and Fry's arrest record was eventually expunged.

Fry then brought this § 1983 suit against Robinson, alleging false arrest and malicious prosecution. Robinson moved for summary judgment, asserting qualified immunity on the basis that probable cause existed for both the warrants and the prosecution. During a deposition, Robinson acknowledged that the February letter from the prosecuting attorney said to refile as a misdemeanor but stated that he was unaware of any misdemeanor that applied to Fry's actions. On questioning about the warrant approval process, Robinson agreed that the municipal court clerk simply notarized the submitting officer's signature and completed the filings. He also stated that he was unaware of any independent probable cause evaluation conducted by the clerk issuing Fry's warrants.

The district court denied Robinson's motion for summary judgment, noting his statements about the clerk's approval process and the lack of any information in the complaints and affidavits to support a probable cause finding. The district court also concluded that importuning requires that an accused ask for sex. It further found that, based on the messages between Fry and Robinson, "it should [have] be[en] patently obvious to any neutral reader that *Robinson* rather than Fry was the party 'asking.'" (Order, R. 25, PageID 457.) As a result, the

district court concluded that "it was not objectively reasonable for [Robinson] to apply for the felony warrants." (*Id.* at 457.) Robinson then filed this appeal.

## II. ANALYSIS

### A. Standard of Review

This court reviews a district court's denial of summary judgment de novo. *Hobart Corp. v. Waste Mgmt. of Ohio, Inc.*, 758 F.3d 757, 765 (6th Cir. 2014). Summary judgment is improper if there is a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). That is, summary judgment should not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view the facts and draw all reasonable inferences "in the light most favorable" to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam). The moving party bears the initial burden of showing an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, where a defendant has raised qualified immunity as a defense, the burden immediately shifts to the plaintiff to prove that immunity does not attach. *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011). Furthermore, "[a] denial of summary judgment on the issue of qualified immunity is immediately appealable." *Cochran v. Gilliam*, 656 F.3d 300, 305 (6th Cir. 2011) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)).

### B. Qualified Immunity

For a plaintiff to meet its burden to show that a government official is not entitled to qualified immunity, the plaintiff must show that (1) the facts, when taken in the light most favorable to the plaintiff, establish that the officer's conduct violated a constitutional right, and (2) the right was clearly established at the time of the officer's conduct such that a reasonable

officer would have known the conduct was unlawful. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 227, 236 (2009). The court may consider these factors in any order it wishes. *Pearson*, 555 U.S. at 236. In considering the reasonableness of the officer's actions, the court must allow officers room for mistakes of law or fact, but officers who are "plainly incompetent or those who knowingly violate the law" will not be entitled to immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

For a right to be "clearly established," the right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bletz*, 641 F.3d at 750 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Such clarity requires that the particular conduct at issue has been established as violative in nature. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam).

### 1. False Arrest

It is well established that arrests require probable cause. *Lyons v. City of Xenia*, 417 F.3d 565, 573 (6th Cir. 2005). Ordinarily, arrest warrants issued by court clerks in Ohio are considered facially valid, entitling an officer to qualified immunity where he or she relies on the judicially secured warrant. *Hale v. Kart*, 396 F.3d 721, 725 (6th Cir. 2005); *Sampson v. City of Xenia*, 108 F. Supp. 2d 821, 836 (S.D. Ohio 1999). Despite this, officers applying for a warrant must "exercis[e] reasonable professional judgment" so as to "minimize" the "danger of an unlawful arrest." *Malley v. Briggs*, 475 U.S. 335, 345–46 (1986).

As a result, a warrant application lacking sufficient indicia of probable cause such that it is unreasonable to believe that probable cause was established violates a person's right to be free from false arrest. *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012); *Malley*, 475 U.S. at 344–45. Likewise, the deliberate or reckless submission of false statements or omission of facts

that are material to a probable cause determination is unconstitutional. *See Wesley v. Campbell*, 779 F.3d 421, 428–29 (6th Cir. 2015); *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). Review of whether a warrant was supported by sufficient indicia of probable cause is limited to "the four corners of the affidavit." *See United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013).

The question is "whether a reasonably well-trained officer in [Robinson's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley*, 475 U.S. at 345. "Affidavits do not have to be perfect, nor do they have to provide every specific piece of information," *Hale*, 396 F.3d at 725, but they do require "particularized facts" that show veracity, reliability, and a basis of knowledge that goes "beyond bare conclusions and suppositions," *Rose*, 714 F.3d at 367.

In this case, the complaints and affidavits submitted by Robinson were plainly lacking in such particularized facts. They excluded the specific details of Fry's actions that constituted the violations and the basis for Robinson's knowledge of the alleged offenses. The documents merely stated the date the offenses occurred, the statutory language of the charged offense, and ambiguously provided a set of initials and a date of birth. Providing the statutory language of the charged offense without at least identifying the basis of knowledge for it does not show probable cause. *See Sampson*, 108 F. Supp. 2d at 837 (citing *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 (1971)). While Robinson argues that J.P.'s initials and date of birth provide the necessary basis of knowledge, there is no indication within the affidavit that the information is intended to communicate his basis of knowledge.

The court clerk's approval of the warrants despite these deficiencies does not offer Robinson absolute protection as he argues. *See Malley*, 475 U.S. at 345–46. While the clerk's approval is a relevant consideration, *Messerschmidt*, 132 S. Ct. at 1250, its relevance is based on

"trusting [the clerk] will not merely rubber-stamp" the warrant application. *See Carrasquillo v. City of Cleveland*, No. 1:10-CV-00219, 2011 WL 3841995, at *4 (N.D. Ohio Aug. 30, 2011). Robinson conceded that the court clerk did not make an independent probable cause determination and that the clerk "just notarize[d] [his] signature and then d[id] the filing." (*See* Robinson Dep., R. 12, PageID 79–82.) Under such circumstances, the clerk's approval of the warrants carries little weight in showing that probable cause was established. *See Malley*, 475 U.S. at 345–46. Consequently, Robinson seeking the arrest warrants on the basis of such bare bones affidavits violated Fry's right to be free from false arrest and precludes qualified immunity. *See id.* at 345–46. We therefore affirm the district court's denial of summary judgment as to the claim of false arrest.

## 2. *Malicious Prosecution*

Robinson also argues on appeal that the district court erred in finding that he did not have probable cause for a prosecution against Fry by asserting that his investigation provided him with a sufficient basis to believe that prosecuting Fry was proper. Fry responds that no reasonable officer would have believed probable cause existed to prosecute under felony charges where the prosecutor had previously ordered the officer to bring misdemeanor charges instead. Fry also argues that, even without the letter, the messages between Fry and Robinson failed to establish solicitation of sex by Fry and that it was therefore unreasonable for Robinson to initiate a prosecution.

We have recognized malicious prosecution as a separate constitutional claim from that of false arrest, "encompass[ing] wrongful investigation, prosecution, conviction, and incarceration." *Sykes*, 625 F.3d at 308 (internal quotation marks and citations omitted); *Johnson*, 790 F.3d at 654. Accordingly, the claim is directed not at a lack of legal process, but rather at the wrongful initiation of the legal process. *Sykes*, 625 F.3d at 308. A malicious prosecution claim therefore

requires a showing that (1) the officer initiated, influenced, or participated in the decision to prosecute; (2) the officer lacked probable cause for the prosecution; (3) as a result of the prosecution, the plaintiff suffered a deprivation of liberty, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 308–09.

Importantly, Fry's malicious prosecution claim differs from his false arrest claim because the review of probable cause includes all information known to the officer at the time of his actions and not just the information included in the arrest warrant application itself. *See Sykes*, 625 F.3d at 308. As a result, and as Fry concedes, the proper question is whether Robinson had probable cause to initiate an arrest and prosecution of Fry for the charged offense. *See id.*

To answer this question, the court must consider the requirements for the offense of importuning. Importuning requires soliciting a minor to engage in sexual activity, and "the harm is in the asking." *State v. Andrews*, 870 N.E.2d 775, 781 (Ohio Ct. App. 2007) (internal quotation marks and citations omitted). The statute does not define "solicitation," but Ohio courts have interpreted the term in the context of importuning to mean "to seek, to ask, to influence, to invite, to tempt, to lead on, [or] to bring pressure to bear." *State v. Tarbay*, No. 10AP-551, 2011 WL 1048962, at *2 (Ohio Ct. App. 2011) (quoting *State v. Skatzes*, 819 N.E.2d 215, 239 (Ohio 2004)). Simply agreeing to a solicitation from a minor is not enough. *See State v. Swann*, 753 N.E.2d 984, 985 (Ohio Ct. App. Mar. 30, 2001). However, sending messages that "try[] to lead [the minor] toward sexual conduct" suffices. *See Tarbay*, 2011 WL 1048962 at *3–4.

In this case, the district court concluded that it was objectively unreasonable for Robinson to believe that Fry had committed the offense of importuning because Robinson, not Fry, is the one who requested sex. However, the district court's conclusion was based on an unnecessarily

limited reading of the statute. While it is true that the transcripts do not reveal Fry ever initiating the request for sex, Fry's messages repeatedly engage in discussion that could be seen as influencing, inviting, tempting, or leading on. *See Tarbay*, 2011 WL 1048962, at *2. Over the entire course of their messages, Fry asked Downer to tell him if she was aroused, how she could make porn, "how naughty" she was, what sexual things she had done before, the age of her oldest sexual partner, and if she had done anything "naughty" recently. (Transcript, R. 14-1, PageID 257–68.) Even after Robinson expressly stated Downer's age, Fry continued to ask what "naughty" things Downer had done and if anyone had "played" with her vagina recently, stated that he could "pull out" instead of using protection, and repeatedly asked when and where they should meet. (*Id.* at 269–89.) Although the messages show Robinson leading the majority of the conversations towards the discussion of sex, this does not negate Fry's efforts to tempt and lead on. Given existing case law on the application of the importuning statute, it was reasonable for Robinson to believe that Fry's messages were sufficient to constitute a violation of the importuning statute.

Although we do not condone Robinson's decision to ignore the prosecutor's instruction to refile as misdemeanor charges, this action does not change the fact that Robinson was reasonable to believe probable cause existed for felony charges based on the available evidence. Moreover, the letter states only that the felony case will be dismissed, without indicating whether the statement is meant as a probable cause determination. Given the totality of the information known to Robinson at the time about the messages, it was reasonable for him to believe that Fry's actions violated the statute despite the letter's statements. Because Robinson had probable cause in initiating the prosecution, there can be no claim for malicious prosecution. Fry therefore failed to establish that qualified immunity does not apply to the malicious prosecution

claim. We thus reverse the district court's denial of summary judgment as to the claim of malicious prosecution.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's denial of the motion for summary judgment with respect to the false arrest claim and reverse with respect to the malicious prosecution claim.